1  TIMOTHY T. SCOTT (State Bar No. 126971)
   tscott@kslaw.com
2  GEORGE R. MORRIS (State Bar No. 249930)
   gmorris@kslaw.com
3  SAMUEL R. DIAMANT (State Bar No. 288738)
   sdiamant@kslaw.com
4  KING & SPALDING LLP
   601 South California Avenue, Suite 100
5  Palo Alto, CA 94304
   Telephone:   (650) 422-6700
6  Facsimile:    (650) 422-6800

7  BRUCE W. BABER (*pro hac vice pending*)
   bbaber@kslaw.com
8  KING & SPALDING LLP
   1180 Peachtree Street, N.E.
9  Atlanta, Georgia 30309
   Telephone:   (404) 572-4600
10 Facsimile:    (404) 572-5100

11 Attorneys for Plaintiffs
   Dolby Laboratories Licensing Corporation
12 and Dolby International AB

13                    UNITED STATES DISTRICT COURT
14                    NORTHERN DISTRICT OF CALIFORNIA

15

16 DOLBY LABORATORIES LICENSING          Case No.
   CORPORATION, a New York corporation,
17 AND DOLBY INTERNATIONAL AB, a         **COMPLAINT FOR COPYRIGHT**
   Swedish corporation,                  **INFRINGEMENT AND BREACH OF**
18                                        **CONTRACT**
              Plaintiffs,
19                                        **DEMAND FOR JURY TRIAL**
          v.
20
   ADOBE SYSTEMS INCORPORATED, a
21 Delaware corporation,

22            Defendant.

23

24

25

26

27

28

Plaintiffs Dolby Laboratories Licensing Corporation and Dolby International AB, by and through their attorneys, bring this action for copyright infringement and breach of contract against Defendant Adobe Systems Incorporated and state as follows:

## INTRODUCTION

1.      For over 50 years, Dolby has been a leader in innovating and delivering cutting-edge technologies that enable the creative community and empower artists with new and ever-improving ways to convey rich entertainment experiences to their audiences.  Today, Dolby technologies can be found in cinemas, internet video services, optical disc players such as DVD and Blu-ray players, mobile media, digital broadcast TV, digital cable, and personal computer software products.  Generally, Dolby does not develop products for sale directly to end-users, but rather broadly licenses its technologies to hundreds of partners, including the largest technology companies in the world, to be included in their products and enable those products to deliver Dolby's next-generation experiences.  Dolby's continued investments in pioneering new technologies, such as the industry-acclaimed Dolby Atmos immersive audio technology and Dolby Vision high dynamic range imaging technology, are directly dependent upon receiving proper compensation from its existing licensees.

2.      Dolby's license agreements generally provide its partners with the opportunity to self-report their sales of products containing Dolby technology.  In order to verify the accuracy of a licensee's reporting of sales and compliance with its other contractual obligations, however, Dolby has broad rights under its license agreements to inspect its licensees' books and records through a third-party audit.  Because Dolby's technologies are so widely adopted across the industry, this audit right and the enforcement of royalty obligations also serves the important function of ensuring a level playing field to prevent noncompliant licensees from gaining an unfair competitive advantage over others who follow the terms of their agreements with Dolby. In its more than 50-year history, Dolby has rarely been required to pursue legal enforcement of its license agreements, and only as a last resort.  Adobe's refusal to comply with its basic contractual obligations make it an outlier in this regard.

COMPLAINT                                                                    CASE NO.

3.       Adobe is a large and sophisticated software company that knows from its own experience that the ability to effectively conduct audits, with full cooperation and compliance from the licensee, is essential to the business of any technology licensor.  As one of the largest software licensors in the world, Adobe actively enforced its own license agreements though a robust audit program to ensure that it was properly compensated by its customers for Adobe's software products.  Moreover, Adobe itself regularly pursued litigation against its own licensees, and even individuals, that it alleged infringed Adobe's intellectual property rights.

4.       Yet when licensing Dolby's technology, Adobe refused to comply with its legal obligations.  Between 2002 and 2017, Adobe designed and sold its audio-video content creation and editing software with Dolby's industry-leading audio processing technologies.  The basic terms of Adobe's licenses for products containing Dolby technologies are clear; when Adobe granted its customer a license to any Adobe product that contained Dolby technology, Adobe was contractually obligated to report the sale to Dolby and pay the agreed-upon royalty.  Adobe also promised that it would not sell products containing Dolby technology outside the scope of the licenses granted by Dolby.  Under all of Adobe's license agreements with Dolby, Dolby had broad rights to inspect Adobe's books and records through a third-party audit, in order to verify the accuracy of Adobe's reporting of sales and payment of royalties.

5.       When Dolby sought to exercise its right to audit Adobe's books and records to ensure proper reporting and payment, Adobe refused to engage in even basic auditing and information sharing practices; practices that Adobe itself had demanded of its own licensees.  Adobe apparently determined that it was better to spend years withholding this information from Dolby than to allow Dolby to understand the full scope of Adobe's contractual breaches.  Yet the limited information that Dolby has reviewed to-date demonstrates that Adobe included Dolby technologies in numerous Adobe software products and collections of products, but refused to report each sale or pay the agreed-upon royalties owed to Dolby.

6.       While the full nature and extent of Adobe's breaches is currently unknown because of its refusal to comply with its audit obligations, Dolby has determined that Adobe's tactics have included, at least: (1) bundling multiple licensed products together but only reporting

2

COMPLAINT                                              CASE NO.

one sale; (2) granting numerous licenses to Adobe products but only reporting a sale to Dolby if and when Adobe or its customer took some further action; (3) failing to report and pay royalties for multiple different product sales to a single customer; (4) misreporting Adobe's professional products under incorrect license agreements; (5) failing to report and pay royalties on upgrades to the Adobe products as agreed in the license agreements; (6) failing to report, or incorrectly reporting, the Dolby technology contained in Adobe products; and (7) selling products containing Dolby technology without any license at all.

7.      These tactics enabled Adobe to include Dolby's technologies as near-ubiquitous features in its software bundles and subscription packages, many of which were "all-inclusive" or organization-wide "all you can eat" licenses, and thereby make its offerings more attractive to potential customers ranging from large companies to individual consumers.  But in doing so, Adobe not only failed to compensate Dolby for its innovative and valuable technologies, but it gained an unfair advantage in the marketplace.

8.      Dolby now brings this action to protect its intellectual property, maintain fairness across its licensing partnerships, and to fund the next generations of technology that empower the creative community which Dolby serves.

## THE PARTIES

9.      Plaintiff Dolby Laboratories Licensing Corporation ("Dolby Licensing") is a New York corporation with its principal place of business at 1275 Market Street, San Francisco, California, 94103.  Plaintiff Dolby International AB ("Dolby International") is a Swedish corporation with its principal place of business at Apollo Building, 3E, Herikerbergweg 1-35, Amsterdam, 1101 CN, Netherlands.  Both Dolby Licensing and Dolby International (collectively referred to hereafter as "Dolby") are indirect wholly-owned subsidiaries of Dolby Laboratories, Inc., a Delaware corporation ("Dolby Laboratories").

10.     Defendant Adobe Systems Incorporated ("Adobe") is a Delaware corporation with its principal place of business at 345 Park Avenue, San Jose, California, 95110.  Adobe describes itself as one of the largest software companies in the world, offering a line of products

3

and services used by creative professionals, marketers, application developers, enterprises and consumers for creating and engaging with content across personal computers, devices and media.

## JURISDICTION AND VENUE

11.     Jurisdiction as to the copyright infringement claims asserted herein is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a) and as to all other claims asserted herein pursuant to 28 U.S.C. § 1367(a).

12.     This Court has personal jurisdiction over Adobe because Adobe maintains its principal place of business in San Jose, California.

13.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Dolby Licensing and Adobe both maintain their principal place of business within the Northern District of California.

## INTRADISTRICT ASSIGNMENT

14.     Under Local Rule 3-2(c), this action involving Intellectual Property Rights is subject to assignment on a district-wide basis.

## SUBSTANTIVE ALLEGATIONS

### Background

15.     For over 50 years, Dolby Laboratories has been a leader in innovation and has developed technologies that greatly improve the quality of audio and audio-visual entertainment ("Dolby Technologies").

16.     For fifteen years, between approximately 2002 and 2017, Adobe benefited from numerous Dolby Technologies that enabled Adobe's software products.  In that time, Adobe incorporated Dolby Technologies in many popular Adobe software products including, but not limited to, Adobe's Audition, After Effects, Encore, Lightroom, Media Encoder, Prelude, Premiere Elements, and Premiere Pro products.

17.     Dolby Technologies delivered functionality in these Adobe products by encoding and/or decoding high-quality digital audio.  And some Adobe products, such as Encore, could not have been made without the inclusion of Dolby Technologies.  The Dolby Technologies licensed to Adobe, subject to the terms of each respective license agreement, included the Dolby

4

Digital Decoder, the Dolby Digital Encoder, the Dolby Digital Plus Professional Decoder, the Dolby Digital Plus Professional Encoder, the Dolby E Professional Decoder, the Dolby E Professional Encoder, and the Dolby Codec Program.

18.     Dolby Digital is an audio data rate reduction technology that restricts the digital encoding and decoding of audio data to those sounds that can be perceived by the human ear and that are not otherwise masked by other audio signals, and relies on other tools to reduce the amount of digital information that must be encoded and decoded to produce high-quality audio. Encoding is the process by which audio inputs are compressed down to an encoded bitstream, and decoding is the inverse process of converting the encoded bitstream for playback through the audio output on a user's device.  Dolby Laboratories researchers spent years determining which portions of an audio signal are perceptible to a human listener, and which portions can be safely ignored, or even distorted by an encoding algorithm to achieve further gains in encoding efficiencies.  With 5.1 channels of high-quality audio (equal to six discrete channels), Dolby Digital expands the left and right traditional stereo (or 2-channel) sound to deliver 360 degrees of surround sound.  Originally launched in cinema applications, Dolby Digital is still used in the encoding and decoding of digital sound in a variety of storage media, including DVDs.

19.     Dolby Digital Plus is an advanced surround sound audio technology.  With 7.1-channel capability (equal to eight discrete channels), Dolby Digital Plus further improves sound quality and is better optimized to be used in streaming, on-demand, and downloaded content.  Dolby Digital Plus is used in, for example, home theaters, smartphones, tablets, operating systems, and internet browsers.

20.     Dolby Digital Plus Professional encoders and decoders allow for the inclusion of additional metadata to aid the decoder in optimizing the decoding of the bitstream into audio output.  The professional encoders and decoders also provide more user control over the bitrate and the number of encoded channels.  These features allow for even higher quality audio output of a stream that has been encoded with the Dolby Digital Plus Professional encoder when used in conjunction with a Dolby Digital Plus Professional decoder.

COMPLAINT                                                                CASE NO.

21.     Dolby Laboratories and/or Dolby Licensing own or have applied for registrations of their claims to copyright in numerous computer programs, other computer software works, code, documentation, specifications, and other works that embody Dolby Technologies (collectively, the "Dolby Copyrighted Works").  As relevant here, Dolby's claims to copyright in numerous computer software works, identified more specifically below, that are part of the Dolby Digital Consumer Decoder and the Dolby Digital Plus Professional Encoder and that are essential to the encoding and decoding functions (collectively, the "Asserted Dolby Works"), are registered with or are the subject of applications that are pending before the United States Copyright Office.

22.     In licensing Dolby Technology to Adobe, Dolby provided Adobe with much more than a mere license to Dolby's intellectual property.  Dolby provided to Adobe a vast quantity of additional intellectual property, including trade secrets, confidential know-how, copyrighted source code, and rights to use Dolby's trademarks to promote Adobe's products.  Dolby also provided substantial amounts of Dolby's other proprietary technical information and materials, including testing information, manuals, and other deliverables.  Dolby's delivery of this valuable package of information to Adobe and the parties' collaboration to implement Dolby Technologies in Adobe products gave rise in each license agreement between Dolby and Adobe to an implied negative covenant that Adobe would not exceed the scope of the licenses granted therein.

### The Relevant License Agreements Between Dolby and Adobe

23.     As relevant to this dispute, Adobe entered into license agreements with Dolby in 2003, 2012 and 2013, setting forth the terms under which Dolby licensed various Dolby Technologies to Adobe.  These license agreements between Dolby and Adobe, as defined and described hereafter, include: an April 1, 2003 Digital Audio System License Agreement; a September 26, 2012 System License Agreement and Addendum thereto; a September 26, 2012 Professional Software Pricing Letter; an August 26, 2013 Professional Software Pricing Letter;

1  and an August 26, 2013 Subscription Letter (collectively, the "License Agreements").[1]

2  Importantly, each of these License Agreements defined the scope of the license granted

3  including, for example, whether Adobe could use the specified Dolby Technologies in Adobe's

4  consumer products or Adobe's professional products.  Each of the License Agreements provided

5  for payment of royalties by Adobe to Dolby for each product or device containing Dolby

6  Technologies licensed by Adobe to its customers.  And each of the License Agreements provided

7  Dolby with broad inspection and audit rights to access Adobe's books and records, which Adobe

8  also promised to maintain, so that Dolby could verify the accuracy of Adobe's reporting of

9  licensed products and its payment of royalties.[2]

10                               The 2003 L3 Agreement

11      24.      Effective April 1, 2003, for valuable consideration, Dolby Licensing and Adobe

12  entered into the Digital Audio System License Agreement, L3D-AC3V (the "2003 L3

13  Agreement").

14      25.      Also effective April 1, 2003, for valuable consideration, Dolby and Adobe entered

15  into a letter agreement entitled "Side Letter: Dolby Digital Consumer Encoder – PC software

16  DVD authoring" that modified and amended certain provisions of the 2003 L3 Agreement.

17      26.      Section 1.11 of the 2003 L3 Agreement, as amended, defines a "Licensed

18  Product" as a "complete ready to use consumer entertainment product, such as a DVD player, or

19  DVD authoring and player application for personal computers which: (1) contains one or more

20  Licensed Devices, (2) is intended or designed for use in decoding a Dolby Digital audio

21  bitstream or intended or designed for use in encoding no more than two full frequency audio

22

23  _____

24      [1] Dolby and Adobe entered into several other agreements over the course of the parties'
    business and licensing relationship which, based on information presently known to Dolby, may

25  not be directly relevant to this dispute.  Those other agreements include: the Implementation
    License Agreement relating to Dolby Digital executed July 17, 2003; the Implementation

26  License Agreement relating to Dolby Digital Decoder executed July 17, 2003; and the System
    License Agreement for Dolby Digital Consumer Decoder in Premiere Elements effective

27  October 6, 2005.
      [2] To the extent that capitalized terms are used hereafter and are not otherwise defined

28  herein, those terms will have the meaning set forth in the applicable License Agreement.

COMPLAINT                                    CASE NO.

channels in a Dolby Digital audio bitstream, and (3) is not primarily intended for the creation of DVD media for cinematic/theatrical releases or for broadcast or internet streaming applications."

27.     Section 1.10 of the 2003 L3 Agreement, as amended, defines a "Licensed Device" as "a digital audio circuit having Dolby Digital Audio System Specifications, whether made in discrete component, integrated circuit, software, or other forms, for decoding or encoding a digital bitstream into one or more audio channels.  A circuit counts as one 'Licensed Device' for each full frequency range audio channel it provides."

28.     Section 3.10 of the 2003 L3 Agreement provides that Dolby will furnish "Know-How" to Adobe and provide upon request "as [Dolby] deems reasonable, consulting services regarding design considerations and general advice relating to the Licensed Products and the sale and use thereof."  Section 1.13 defines "Know-How" to include "all proprietary information, trade secrets, skills, [and] experience" relating to the Licensed Devices and the Licensed Products.

29.     Under the royalty provisions of the 2003 L3 Agreement, Adobe agreed to pay royalties on each Licensed Device that it sold in a Licensed Product.  Section 4.02 of the 2003 L3 Agreement provides that Adobe "shall pay to [Dolby] royalties on Licensed Devices manufactured by or for [Adobe] and incorporated into Licensed Products which are used, sold, leased, or otherwise disposed of hereunder…"  Under this language, Adobe agreed to pay multiple royalties for a Licensed Product that contained multiple Licensed Devices.

30.     Section 4.04 of the 2003 L3 Agreement provides that "A Licensed Product shall be considered sold under Section 4.02 when invoiced, or if not invoiced, delivered to another by [Adobe] or otherwise disposed of or put into use by [Adobe]..."  Thus, a "Sale" occurs under the 2003 L3 Agreement as soon as Adobe charges its customer for the right to use the Adobe product, and Adobe is obligated to report that Sale to Dolby and pay the corresponding royalty.

31.     Section 4.02 of the 2003 L3 Agreement provides a limited exception to the payment of royalties in the case of "Updates" to Licensed Products.  An "Update" is defined narrowly in Section 1.23 as "a later version of a software Licensed Product that (a) does not contain changes other than bug fixes, (b) will install only on a PC containing a pre-existing

8

version of such Licensed Product for which the required royalty has been paid, (c) automatically removes pre-existing versions of such software Licensed Product, upon installation of the Update; and (d) is free to end users via download from [Adobe's] web site."  Any later version that contains a change other than a bug fix does not qualify as an Update, nor does any later version for which Adobe charges its customers.  Rather, such new products require that Adobe report another "Sale."

32.      Section 4.05 of the 2003 L3 Agreement sets forth Adobe's obligations to provide Dolby with quarterly reports including, among other requirements, the "number of each model type of Licensed Products leased, sold, or otherwise disposed of by [Adobe] during the calendar quarter" and "the number of Licensed Devices in each model type of Licensed Product."

33.      Section 4.07 of the 2003 L3 Agreement obligates Adobe to "keep complete books and records of all sales, leases, uses, returns, or other disposals by [Adobe] of Licensed Products for a period of three (3) years from such sales, leases, uses or other disposals."

34.      Section 4.08 of the 2003 L3 Agreement permits Dolby, through its auditors, to "inspect, examine and make abstracts of the said books and records insofar as may be necessary to verify the accuracy of the same and the statements provided for herein…"

35.      Section 6.04 of the 2003 L3 Agreement identifies several provisions or rights that will survive termination of the agreement, including Adobe's obligations to pay royalties, Adobe's obligations to maintain books and records and Dolby's right to examine, audit and copy those books and records (Sections 4.07 and 4.08), and the right to any cause of action accrued or to accrue for any breach by the other party.

36.      Section 8.06 of the 2003 L3 Agreement provides that the prevailing party in any action for breach of the agreement is entitled to recover all costs and expenses incurred in that action and any appeal therefrom including, but not limited to, all reasonable attorneys' fees and costs.

### The September 2012 System Agreement

37.      Effective September 26, 2012, for valuable consideration, Dolby and Adobe entered into System License Agreement No. AGR1200961 (the "2012 System Agreement").

Standing alone, the 2012 System Agreement does not by itself grant a license to any particular Dolby Technologies unless and until an Order Form or Addendum is executed by the parties that specifically identifies the Dolby Technologies being licensed.  The 2012 System Agreement instead provides the terms and conditions under which any license is granted in an Addendum or Order Form.

38.     Sections 2.2 and 2.4 of the 2012 System Agreement require Licensed Products to conform to Dolby's then-current testing requirements and procedures.

39.     Section 4.2 of the 2012 System Agreement obligates Adobe to pay Dolby royalties on all Licensed Products "Sold" in accordance with Appendix B.

40.     Section 10.18 of the 2012 System Agreement defines "'Sale, 'Sell' or 'Sold,'" and provides that "[i]n the case of Software products, a product will be considered 'Sold' when the product is first licensed for use."  Thus, Adobe's reporting and payment obligations to Dolby under the 2012 System Agreement is triggered at the time Adobe first "licenses" its product to its customers.  No other or further action by Adobe or its customer is required to trigger Adobe's reporting and payment obligations to Dolby.

41.     Section 4.6 of the 2012 System Agreement sets forth Adobe's quarterly reporting obligations and requires that Adobe provide a quarterly report within 30 days after the end of each calendar quarter identifying any Sales of a Licensed Product that occurred during the previous calendar quarter.

42.     Section 4.7 of the 2012 System Agreement sets forth Adobe's contractual obligations to maintain "complete books and records about [Adobe's] operations relating to the Technology, including all Information required for [Adobe's] reporting obligations under this Agreement, for a period of at least 7 years from delivery of the Quarterly Report to which the information relates."

43.     In addition, Section 4.7 of the 2012 System Agreement provides that "at [Dolby's] expense, during business hours, on at least 10 days' notice, and not more often than once a year, [Dolby] or [Dolby's] agent(s) may inspect and make abstracts of any books or records of [Adobe] or its Subsidiaries (including but not limited to manufacturing and purchasing

10

records for components of Licensed Products and any Licensed Product work in process, including specification sheets and bills of materials, data about inventory movement and balances, sales and shipping data that tie to financial statements and/or management reports), wherever located and however stored to verify the accuracy of [Adobe's] Quarterly Reports and [Adobe's] compliance with its obligations herein."

44.     Section 4.7 further provides that Adobe is contractually obligated to "cooperate with this examination and provide reasonable access to…all information (including information not related to Sales of Licensed Products necessary to verify the integrity of [Adobe's] records and the accuracy of [Adobe's] Quarterly Reports), and…relevant personnel requested by [Dolby]…as necessary to allow the examination to be completed in a timely manner."

45.     Section 4.8 of the 2012 System Agreement provides that if the audit results in a finding of Unpaid Royalties for any consecutive 4 quarter period exceeding 5% of the total royalties due during such period, Adobe is obligated to pay for the full cost of any examination and collection undertaken by or for Dolby, including all accounting, audit and legal fees and costs, plus interest at the rate of 1.5% per month.

46.     In Section 5.11 of the 2012 System Agreement, the parties agreed that an actual or threatened violation by Adobe of Section 4.7 (Licensor's inspection rights) will constitute irreparable injury for which monetary damages are an inadequate remedy, thereby entitling Dolby to equitable relief, including injunctive relief or specific performance, in any court, in addition to its legal remedies.

47.     Section 6.1 of the 2012 System Agreement provides that Dolby "grants [Adobe] a personal, indivisible, non-exclusive license to certain Dolby IP, solely for each Technology identified in the Order Form, and solely for the duration of the applicable term for each such Technology."  Section 10.5 defines "Dolby IP" as including "Patents, Trademarks, know-how and copyrighted works for a particular Technology…"

48.     Section 6.2 of the 2012 System Agreement states that "[t]here are no implied licenses under this Agreement, and all rights not expressly granted to [Adobe] are reserved by [Dolby]."

49.     Through Section 8.3 of the 2012 System License Agreement, Adobe represented and warranted that it will not "make, use, Sell or import a product containing Dolby IP if such product violates intellectual property rights of [Dolby]…"

50.     Section 9.8 of the 2012 System Agreement provides that the prevailing party in any action under the agreement will be entitled to recover from the other party all costs and expenses incurred in that action or any appeal therefrom including all reasonable attorneys' fees and other related costs.

51.     Section 9.10 of the 2012 System Agreement provides that the following provisions, *inter alia*, survive termination of the agreement:  Sections 4.2 (Royalty Payments), 4.3 (Payment), 4.6 (Quarterly Reports), 4.7 (Inspection of Books and Records), 4.8 (Under Reporting Sales), 5.11 (Equitable Relief), 9.7 (Jurisdiction, Venue, and Governing law), and 9.8 (Attorneys' Fees).

52.     Section 10.11 defines a Licensed Product to mean a consumer product approved by Dolby that is complete and ready to use for an end-user market, that contains an approved implementation of Dolby Technology, that performs the Technology in whole or in part, and that bears a trademark of Adobe.

<u>The DCP Addendum to the 2012 System Agreement</u>

53.     Also on September 26, 2012, for valuable consideration, Dolby and Adobe entered into an addendum to the 2012 System Agreement entitled "Addendum to System License Agreement PC, Mobile Device And Tablet Software," which included an Order Form for the Dolby Codec Program (the "DCP Addendum").

54.     Through the 2012 System Agreement and the DCP Addendum, Dolby licensed to Adobe the Dolby Codec Program for use in consumer software and consumer applications for PC, Mobile Device and Tablet products.  The license specifies that such technology "may only be used for consumer software and consumer applications for PC, Mobile Device and Tablet products ('Software')."  Thus, none of Adobe's professional products are covered under this license.  Because Adobe's professional products were not licensed by the DCP Addendum, Adobe's Sale of a professional product that contained a Dolby Digital Consumer Decoder—but

12

1    did not qualify under the professional product License Agreements described hereafter—would

2    constitute an unlicensed Sale.

3        55.        The Dolby Codec Program included the following Dolby Technologies:  Dolby

4    Digital Plus Consumer Decoder, TrueHD Consumer Decoder, Dolby Digital Plus Consumer

5    Encoder, Dolby Headphone, and Dolby Digital Compatible Output (each for the processing of up

6    to 7.1 channels of audio per technology), and Dolby Digital Consumer Decoder and Dolby

7    Digital Consumer Encoder (each for the processing of up to 5.1 channels of audio per

8    technology).

9        56.        Consistent with the 2012 System Agreement, Appendix B1 to the DCP

10   Addendum provides that a Software product "will be considered 'Sold' when the product is first

11   licensed for use."  Thus, Adobe's reporting and payment obligations are triggered as soon as

12   Adobe licenses a product that contains Dolby Technology to an Adobe customer.  There is

13   nothing in the License Agreements that delays Adobe's obligations until the occurrence of any

14   other act by Adobe or its customers.  Appendix B1 of the DCP Addendum sets forth the royalty

15   rates for each Licensed Product "Sold" by Adobe.  Because each "Sale" of a license by Adobe

16   must be separately reported to Dolby, nothing in the License Agreements allows Adobe to

17   bundle together separate Licensed Products, and only report one Sale.

18       57.        Appendix C to the DCP Addendum provides that Adobe may create Updates to

19   the Licensed Products for which no additional royalty is payable.  An Update is defined, in

20   pertinent part, as a later version of a software Licensed Product that: (a) does not contain changes

21   other than minor bug fixes; (b) will install only if a previous version of such Licensed Product

22   for which the required royalty has been paid is installed; (c) automatically removes pre-existing

23   versions of such software upon installation of the Update; and (d) is free to end-users.  Any

24   product that fails any of these criteria does not qualify as an Update and must therefore be

25   reported and paid for by Adobe.

26       58.        Section 5 of Appendix C also subjects sales of Software Licensed Products to

27   Dolby's then-current Software Distribution Policy.  Dolby's relevant Software Distribution

28   Policy was effective June 18, 2009 (the "2009 Policy"), and was subsequently updated for DCP

13

licensees on January 1, 2013 (the "2013 Update") and on July 1, 2015 (the "2015 Update"). Section II.C of the 2009 Policy states that any changes to Licensed Products that alter the implementation, functionality, or application of the Dolby Technology constitute new Licensed Products and an additional royalty is owed.  Subsection II.C.3 states that Upgrades that do not alter the Dolby Technology will not incur a separate royalty unless the Dolby trademarks or technology are used to promote the new product.  Notwithstanding the other provisions of Section II.C, Subsection II.C.4 states that even if an Upgrade does not alter the Dolby Technology or provide additional functionality, an additional royalty is owed if the Upgrade has (1) a name change, or (2) a version number change to the left of the decimal (*e.g.*, Lightroom 5 to Lightroom 6, but not 5.1 to 5.2).

The September 2012 Professional Pricing Letter

59.     At the same time that they entered into the 2012 System Agreement and DCP Addendum, Dolby and Adobe entered into a pricing letter dated September 12, 2012 (the "September 2012 Professional Pricing Letter") under the 2012 System Agreement, effective September 26, 2012.

60.     The September 2012 Professional Pricing Letter granted Adobe a license and provided pricing for certain Adobe "Professional Software Licensed Products (the 'Eligible Products')" identified by Adobe to include products "such as Premier [*sic*] Pro, After Effects, Creative Cloud, Production Premium and Master Collection, and other comparable Professional Software Licensed Products that [Adobe] may develop in the future that include Dolby Digital Plus Professional Encoder (7.1 channels)...and Dolby Digital Plus Consumer Decoder (7.1 channels)..."  Dolby Digital Plus Professional Encoder and Dolby Digital Plus Consumer Decoder are defined by the September 2012 Professional Pricing Letter as the "Licensed Technologies."

61.     Section 1 of the September 2012 Professional Pricing Letter states that "[t]he pricing offered in this Pricing Letter does not apply to any Software Licensed Product or other Licensed Product incorporating only one of the Licensed Technologies or one of the Licensed Technologies in combination with other Dolby Technologies."  A "Software Licensed Product"

14

COMPLAINT                                             CASE NO.

under the 2012 System Agreement and DCP Addendum is defined as "consumer software and consumer applications for PC, Mobile Device and Tablet products ("Software")."  The licenses and pricing set forth in the September 2012 Professional Pricing Letter therefore have no application to Adobe's consumer products or to products with only one of the Licensed Technologies.

62.     Section 2 of the September 2012 Professional Pricing Letter provides that Adobe will pay Dolby royalties "for each license of an Eligible Product Sold" and incorporates by reference the definition of "Sale" from the 2012 System Agreement and the DCP Addendum; products are Sold "when the product is first licensed for use."

63.     Section 3 of the September 2012 Professional Pricing Letter includes several promises, namely that Adobe would:  (1) support the Licensed Technologies in the next release of CS6.x for Creative Cloud subscription holders, CS7 release, and any subsequent release during the term of the System Agreement and Addendum; (2) make reasonable effort to expand the user interface in the CS7 release to promote usage of the multi-channel mixing functionality of the Licensed Technologies; (3) make reasonable effort to promote the Licensed Technology brand name and features in relevant technical marketing materials and highlight such Licensed Technology in feature demonstrations during major industry events; (4) make reasonable effort to identify Dolby in Adobe's website and in technical marketing materials as a premier partner; and (5) support Dolby Digital Plus Professional Encoder in all popular streaming formats within Adobe's format profiles.

64.     On information and belief, Adobe breached the obligations of Section 3 of the September 2012 Professional Pricing Letter by failing to honor these contractual promises.

65.     Section 4 of the September 2012 Professional Pricing Letter provides that "[s]ubject to the terms of the System Agreement, the Addendum, and this Pricing Letter, Dolby grants to [Adobe] a personal, indivisible, non-exclusive license for the term under the Dolby IP to design and make, have made, use, import and Sell Eligible Products that include Dolby Digital Plus Professional Encoder."  Thus, if an Adobe product contained a Dolby Digital Plus Professional Encoder but did not otherwise constitute an Eligible Product under the September

15

2012 Professional Pricing Letter, the Sale of that product by Adobe would constitute an unlicensed Sale.

66.      Section 5 of the September 2012 Professional Pricing Letter states that it "shall expire concurrently with the expiration of the DD+CD license, as provided for in the Addendum. For avoidance of doubt, the System Agreement, the Addendum, and any other agreements required for the Sale of the Eligible Products must remain in effect for [Adobe] to receive the pricing in this Pricing Letter.  If there is a conflict between the terms in the Pricing Letter and the System Agreement or the Addendum, the terms of this Pricing Letter shall prevail.  All other terms in the System Agreement and the Addendum remain in full force and effect."  Those other terms include, *inter alia*, broad inspection rights and reporting and payment obligations.

<u>The August 2013 Professional Pricing Letter</u>

67.      Adobe and Dolby entered into a pricing letter dated August 26, 2013 (the "August 2013 Professional Pricing Letter"), effective as of September 27, 2013, which by its terms canceled and superseded the September 2012 Professional Pricing Letter.

68.      The August 2013 Professional Pricing Letter applied solely to Adobe's "Professional Software Licensed Products (the 'Eligible Licensed Products')" identified by Adobe to include products "such as Premier [*sic*] Pro, After Effects, Production Premium and Master Collection, and other comparable Professional Software Licensed Products that [Adobe] may develop in the future that include" (1) the Dolby Digital Plus Professional Encoder (up to 7.1 channels), (2) the Dolby Professional Transcoder library and (3) the Dolby Digital Plus Professional Decoder (up to 7.1 channels).  Dolby Digital Plus Professional Encoder and Dolby Digital Plus Professional Decoder are jointly defined as the "Licensed Technologies" that the "Eligible Licensed Products" are defined to contain.  The Eligible Licensed Products "may also include Dolby E Professional" Encoders and Decoders.

69.      Section 1 of the August 2013 Professional Pricing Letter states that "the pricing offered in this Pricing Letter does not apply to any Software Licensed Product or other Licensed Product incorporating only one of the Licensed Technologies or one of the Licensed Technologies in combination with other Dolby Technologies."  Again, a "Software Licensed

16

Product" under the 2012 System Agreement and DCP Addendum is defined as "consumer software and consumer applications for PC, Mobile Device and Tablet products ('Software')." The licenses and pricing set forth in the August 2013 Professional Pricing Letter therefore had no application to consumer products or to products with only one of the Licensed Technologies.

70.     Section 2 of the August 2013 Professional Pricing Letter provides that Adobe will pay Dolby royalties "for each license of an Eligible Product Sold" and incorporates by reference the definition of "Sale" from the 2012 System Agreement and the DCP Addendum; products are Sold "when the product is first licensed for use."

71.     Section 3 of the August 2013 Professional Pricing Letter includes several promises, namely that Adobe would:  (1) support the Licensed Technologies in the next major CC release for Creative Cloud subscription holders and any subsequent release during the term of the System Agreement and Addendum; (2) make reasonable effort to expand the user interface in the major CC release to promote usage of the multi-channel mixing functionality of the Licensed Technologies; (3) make reasonable effort to promote the Licensed Technology brand name and features in relevant technical marketing materials and highlight such Licensed Technology in feature demonstrations during major industry events; (4) make reasonable effort to identify Dolby in Adobe's website and in technical marketing materials as a premier partner; and (5) support Dolby Digital Plus Professional Encoder and Dolby Digital Plus Professional Decoder in all popular streaming formats within Adobe's format profiles.

72.     On information and belief, Adobe breached the obligations of Section 3 of the August 2013 Professional Pricing Letter by failing to honor these contractual promises.

73.     Section 5 of the August 2013 Professional Pricing Letter provides that "subject to the terms of the System Agreement, the Addendum, and this Pricing Letter, Dolby grants to [Adobe] a personal, indivisible, non-exclusive license for the term under the Dolby IP to design and make, have made, use, import and Sell Eligible Products that include Dolby Digital Plus Professional Encoder, Dolby Digital Plus Professional Decoder, Dolby E Professional Encoder, and Dolby E Professional Decoder, and Dolby Professional Transcoder."  Thus, if an Adobe product contained a Dolby Digital Plus Professional Encoder but did not otherwise constitute an

17

COMPLAINT                                                    CASE NO.

Eligible Product under the August 2013 Professional Pricing Letter, the Sale of that product by Adobe would constitute an unlicensed Sale.

74.     Section 6 of the August 2013 Professional Pricing Letter states that it "shall expire concurrently with the expiration of the Dolby Codec Program license, as provided for in the Addendum.  For avoidance of doubt, the System Agreement, the Addendum, and any other license agreements required for the Sale of the Eligible Licensed Products must remain in effect for [Adobe] to receive the pricing under this Pricing Letter.  If there is a conflict between the terms in this Pricing Letter and the System Agreement or the Addendum, the terms of this Pricing Letter shall prevail.  All other terms in the System Agreement and the Addendum remain in full force and effect."

The August 2013 Subscription Letter

75.     Adobe and Dolby entered into another letter agreement dated August 26, 2013 (the "August 2013 Subscription Letter"), effective as of September 27, 2013.

76.     The August 2013 Subscription Letter applies solely to Adobe's "Creative Cloud Professional Software services (the 'Eligible Service') and the Professional Software Licensed Products accessible…through the Eligible Service that include Dolby Digital Plus Professional Encoder (up to 7.1 channels) and Dolby Digital Plus Professional Decoder (up to 7.1 channels)," jointly defined as the "Licensed Technologies" that must be included in the "Eligible Licensed Products."  The Eligible Licensed Products may also include Dolby E Professional Encoders and Decoders.

77.     By its terms, the August 2013 Subscription Letter "does not apply to any Software Licensed Product or other Licensed Product incorporating only one of the Licensed Technologies or one of the Licensed Technologies in combination with other Dolby Technologies."  A "Software Licensed Product" under the 2012 System Agreement and DCP Addendum is defined as "consumer software and consumer applications for PC, Mobile Device and Tablet products ('Software')."  Thus, this agreement, and its underlying reporting and payment methodology, does not apply to any of Adobe's consumer software or software with only one of the Licensed Technologies.

18

78.     Section 2 of the August 2013 Subscription Letter provides that Adobe will pay Dolby royalties for Professional Products delivered through Creative Cloud based on the average daily maximum number of subscribers per quarter.

79.     Section 4 of the August 2013 Subscription Letter obligates Adobe to track and keep records of the maximum number of subscribers each day, and calculate the average of the daily maximum number.

80.     Section 5 of the August 2013 Subscription Pricing Letter provides that "subject to the terms of the System Agreement, the Addendum, and this Pricing Letter, Dolby grants to Licensee a personal, indivisible, non-exclusive license for the term under the Dolby IP to design and make, have made, use, import and Sell Eligible Licensed Products that include Dolby Digital Plus Professional Encoder, Dolby Digital Plus Professional Decoder, Dolby E Professional Decoder, and Dolby E Professional Decoder."  Thus, if an Adobe product contained a Dolby Digital Plus Professional Encoder but did not otherwise constitute an Eligible Product under the August 2013 Subscription Letter, the Sale of that product by Adobe would constitute an unlicensed Sale.

**Adobe Transitions Its Business to the Cloud**

81.     In 2002 and 2003, when Dolby and Adobe began their business and licensing relationship, Adobe was selling its software in "shrink-wrap" form.  Adobe would load its software onto a disc, package that disc in a shrink-wrapped box, and sell the software to its customers "off the shelf" or through digital downloads to its customers' computers through the internet.  This made Adobe's reporting of the Sale of a subsequent Upgrade of a Licensed Product very easy; when an Adobe customer bought a new version of an Adobe product (*e.g.*, Lightroom 5 to replace Lightroom 4), a new Sale was reported to Dolby.

82.     In late 2011, Adobe was in the early stages of transitioning its software to a cloud-based "Software as a Service" (or "SaaS") model.  Under Adobe's new model, Adobe customers purchase subscriptions to access a collection of software products from Adobe's cloud-based service called Creative Cloud.  Upon purchasing a subscription, Adobe's customer is immediately licensed by Adobe to numerous Adobe software products that contain Dolby

19

1   Technologies.  Creative Cloud is offered to customers in different pricing tiers, and the collection

2   of available software products is dependent upon the pricing tier elected by the consumer; the

3   more a customer pays to Adobe in subscription fees, the more software to which the customer is

4   licensed, including licenses to many additional products that contain Dolby Technologies.

5       83.       In Creative Cloud, after selecting a subscription level and paying for the

6   subscription on the Adobe website, the Creative Cloud desktop application automatically

7   downloads onto the user's computer desktop.  From the Creative Cloud desktop application, the

8   user can then select and download nearly thirty Adobe software applications or products.  The

9   applications and products offered under the "All Apps" subscription level for an individual user

10  have included, without limitation:  Photoshop, Lightroom, Illustrator, InDesign, Acrobat DC,

11  Experience Design, Project Felix, Bridge, Premiere Pro, After Effects, Character Animator,

12  Audition, Animate, Dreamweaver, Muse, InCopy, Fuse, Prelude, Media Encoder, SpeedGrade,

13  Flash Builder Premium, Scout, Gaming SDK, Extension Manager, and Extendscript Toolkit.

14  The Creative Cloud desktop application also allows users to select a "Previous Version" option

15  which then makes available prior versions of these software products to which Adobe has also

16  granted its customer a license.  To update the currently-downloaded version to the latest version

17  available from Adobe, the user can select applications to update from their Creative Cloud

18  desktop, or "update all" applications at once from the cloud.

19      84.       Adobe's customers do not "click through" any software license agreement when

20  purchasing their Creative Cloud subscription or accessing software for the first time.  Instead, the

21  user's license for this software is subject to the current terms and conditions of the "Adobe

22  General Terms of Use" found on Adobe's website at:  http://www.adobe.com/legal/terms.html.

23  Section 2.1 of the Adobe General Terms of Use grants the user a license as follows: "License.

24  Subject to your compliance with these terms and the law, you may access and use the Services."

25  The first paragraph of the Adobe General Terms of Use defines the "Services" as "[Adobe's]

26  website or services such as the Creative Cloud (collectively, 'Services') and software that we

27  include as part of the Services, including any applications, Content Files (defined below), scripts,

28  instruction sets, and any related documentation (collectively 'Software').  By using the Services

20

COMPLAINT                                                CASE NO.

or Software, you agree to these terms.  If you have entered into another agreement with us concerning specific Services or Software, then the terms of that agreement controls where it conflicts with these terms."

85.     Under this framework and pursuant to the Adobe General Terms of Use, subscribers to Creative Cloud receive a license to use all software applications made available through Creative Cloud (including prior versions of such software) upon their purchase of the subscription.

**Adobe Breached the Agreements By Refusing to Cooperate with Dolby's Audit**

86.     On January 5, 2015, Dolby exercised its contractual rights under the License Agreements to inspect Adobe's books and records for the inspection period 2012-2014 and engaged a third party audit firm to assist it.

87.     Adobe is no stranger to the requirements of an audit.  Through 2015, Adobe's own audit and enforcement program was one of the top-five most active among software publishers, along with other software giants IBM, Microsoft, Oracle, and SAP.  As a software licensor with a robust audit and enforcement program, Adobe knew what information Dolby was requesting and why Dolby needed that information to complete the audit.

88.     In fact, the Adobe General Terms of Use provide Adobe with audit rights over its own licensees under a framework similar to Dolby's audit rights:  "If you are a business, company, or organization, then we may, no more than once every 12 months, upon seven 7 days' prior notice to you, appoint our personnel or an independent third party auditor who is obliged to maintain confidentiality to inspect (including manual inspection, electronic methods, or both) your records, systems, and facilities to verify that your installation and use of any and all Software or Services is in conformity with its valid licenses from us.  Additionally, you will provide us with all records and information requested by us in order to verify that its installation and use of any and all Software and Services is in conformity with your valid licenses from us within 30 days of our request.  If the verification discloses a shortfall in licenses for the Software or Services, you will immediately acquire any necessary licenses, subscriptions, and any applicable back maintenance and support.  If the underpaid fees exceed 5% of the value of the

21

1  payable license fees, then you will also pay for our reasonable cost of conducting the

2  verification."

3       89.      Notwithstanding having enforced hundreds of audits of its own licensees, and

4  notwithstanding providing to Dolby repeated assurances that it would comply with its audit

5  obligations, for over three years Adobe employed various tactics to frustrate Dolby's right to

6  audit Adobe's inclusion of Dolby Technologies in Adobe's products.

7       90.      The data that Adobe offered to provide was limited in time and to what Adobe

8  unilaterally determined its obligations to be under the License Agreements.  However, Adobe

9  was already contractually obligated to disclose information related to what it determined were

10 "Dolby" products in Adobe's quarterly reports.  Thus, Adobe effectively proposed that the audit

11 start and end with the data set that Adobe had presumably already disclosed in its quarterly

12 reports.

13      91.      An audit consisting only of reviewing what was previously reported is, of course,

14 no audit at all.  The entire point of an audit is to verify the accuracy of the prior representations

15 of Adobe about what was or was not a royalty-bearing "Sale" of Adobe's various products that

16 contain Dolby Technologies.  Accordingly, under the audit provisions of the License

17 Agreements, Adobe was required to provide complete information including "information not

18 related to Sales of Licensed Products necessary to verify the integrity of [Adobe's] records and

19 accuracy of [Adobe's] Quarterly Reports."  Adobe failed to provide that information.  And there

20 was simply no way for Dolby to complete an audit based on the limited and self-selected

21 information that Adobe would agree to provide.  Adobe nevertheless assured Dolby that it would

22 provide sufficient information to allow for the audit to be completed.

23      92.      After more than three years of attempting to audit Adobe's Sales of products

24 containing Dolby Technologies, Dolby still has not received the information required to

25 complete an audit for the full time period.

26      93.      While Adobe was actively impeding Dolby's audit rights, Adobe sought new

27 licenses to Dolby Technologies, and requested lower pricing.  Dolby insisted that, because the

28 audit had been outstanding for so long, it must be completed before Dolby would grant any new

22

COMPLAINT                                    CASE NO.

1    licenses to Adobe.  Unhappy with this response, in the Spring and Summer of 2017 Adobe

2    escalated these issues to senior executives of both Adobe and Dolby.  During these many

3    discussions, the senior executives of Adobe assured Dolby that Adobe would complete the audit.

4    Notwithstanding these assurances, little progress was made.

5        94.    On September 8, 2017, Dolby notified Adobe that it was also exercising its

6    contractual audit rights for the inspection period beginning January 2015 and ending with the

7    most recent quarter.

8        95.    Once more, Adobe failed to provide Dolby with complete auditable information.

9    Adobe did not provide Dolby with its books and records on 10 days' notice, only making

10   "promises" regarding what it intended to provide.  But even the data promised by Adobe—and

11   not actually timely delivered—would not be sufficient to allow Dolby to conduct a meaningful

12   audit of Adobe's books and records.  Adobe's promises regarding information it would consider

13   providing for the 2015-2017 inspection period suffered from the same flaws as the information

14   from the earlier 2012-2014 inspection period.

15       96.    From the time that Dolby began its audit of Adobe's books and records in January

16   2015, through the present, Adobe has made several statements and promises that led Dolby to

17   believe that Adobe would eventually provide auditable information.  Adobe initially participated

18   in the audit and purported to provide information to the auditors or promised to do so.  Adobe's

19   executives assured Dolby in the Spring and Summer of 2017 that Adobe would comply with the

20   audit, and Dolby refrained from filing suit in reliance upon these assurances.  Thereafter, in

21   September 2017, Dolby expanded the scope of the audit for the time period after 2015.  Again,

22   Adobe promised to provide some information but did not ultimately provide Dolby with any

23   complete set of books and records.

24       97.    Because of Adobe's failure to abide by its audit obligations and its failure to

25   perform in accordance with its assurances to Dolby, Dolby was prevented from discovering the

26   nature and extent of Adobe's breaches or infringement.  While the information that Adobe

27   provided was neither sufficient nor complete enough to permit Dolby's audit to move forward in

28   a meaningful way, the parties engaged in discussions over the course of several years regarding

23

1    these audit-related issues and Adobe provided assurances that it would eventually comply with

2    its audit obligations, upon which Dolby relied.  Adobe's assurances of compliance with Adobe's

3    audit obligations continued to as recently as February 2018.

4        98.    Because the audit-related discussions remained ongoing from January 2015

5    through February 2018, and because Adobe provided assurances of its performance at various

6    points throughout that time period including as recently as February 2018, any otherwise

7    applicable limitations period for Dolby's claims relating to Adobe Sales that either breached the

8    License Agreements or infringed Dolby's copyright rights in the Dolby Copyrighted Works was

9    tolled until at least February 2018.

10       99.    Dolby discovered that Adobe had no intention to fully comply with its audit

11   obligations when, frustrated by Adobe's prior assurances that remained unfulfilled, Dolby

12   demanded as a condition to further discussions that Adobe enter into a formal tolling agreement

13   preserving its rights back through at least 2012, or stipulate that the statute of limitations on

14   Dolby's claims were equitably tolled.  Adobe refused to enter into such an agreement or

15   stipulation, thereby making plain for the first time its strategy in failing to comply with the audit.

16   Dolby thereby learned that Adobe's representations and assurances were not true and that Adobe

17   would not comply with its audit obligations.  In fact, on information and belief, Adobe had never

18   intended to provide Dolby with complete information sufficient for Dolby to conduct a

19   meaningful audit of Adobe's books and records.  Once Dolby discovered the need to proceed

20   with litigation, it proceeded diligently to file this lawsuit.

21                    **Adobe Failed to Accurately Report and Pay Royalties**

22       100.   The full extent of Adobe's contractual breaches and copyright infringement

23   cannot be known by Dolby at this time because Adobe has provided only limited, incomplete

24   information in connection with Dolby's attempts to conduct an audit.  To Dolby's knowledge at

25   this time, however, Adobe has breached the License Agreements and infringed Dolby's

26   copyright rights in the Dolby Copyrighted Works in at least the following ways:

27

28

COMPLAINT                                                CASE NO.

Improper Consolidation of Multiple Software Products

101.     One example of Adobe's attempts to avoid paying royalties properly due is Adobe's practice of packaging multiple software products containing Dolby Technologies in "bundles" or "collections" but then only reporting and paying one royalty to Dolby for the Sale of such a bundle or collection.  These bundles or collections include, but are not limited to, the following Adobe offerings:  Master Collection, Video Bundle, and Production Premium.  On information and belief, Adobe also bundled versions of its Media Encoder product that contained Dolby Technologies with several other Adobe products, but failed to report those Sales to Dolby in any way.

102.     Adobe reported its bundled Master Collection products as one product, when it actually contained at least four separate and independent software products.  On information and belief, each of these software products had its own separate and independent copy of Dolby Technology and each is installed separately and functions independently: Premiere Pro, After Effects, Prelude, and Media Encoder.  The Master Collection bundle of products is not a "suite" of software as defined by Appendix C of the 2012 System Agreement.  Royalties must therefore be paid separately for each software product Sold in Master Collection that contains Dolby Technology.  In breach of the License Agreements, instead of properly reporting the actual Sale of four separate software products through Master Collection, Adobe only reported the Sale of one product.

103.     Adobe reported its bundled Video Bundle products as one product, when it actually contained at least three and potentially four separate and independent software products.  On information and belief, each of these software products had its own separate and independent copy of Dolby Technology and each is installed separately and functions independently:  After Effects Professional, Premiere Pro, Encore DVD, and potentially Media Encoder.  The Video Bundle bundle of products is not a "suite" of software as defined by Appendix C of the 2012 System Agreement.  Royalties must therefore be paid separately for each software product Sold in Video Bundle that contains Dolby Technology.  In breach of the License Agreements, instead

of properly reporting the actual Sale of three or four separate software products through Video

Bundle, Adobe only reported the Sale of one product.

104.     Adobe reported its bundled Production Premium products as one product, when it actually contained two separate and independent software products.  On information and belief, each of these software products had its own separate and independent copy of Dolby Technology and each is installed separately and functions independently:  Premiere Pro and After Effects. The Production Premium bundle of products is not a "suite" of software as defined by Appendix C of the 2012 System Agreement.  Royalties must therefore be paid separately for each software product Sold in Production Premium that contains Dolby Technology.  In breach of the License Agreements, instead of properly reporting the actual Sale of two separate software products through Production Premium, Adobe only reported the Sale of one product.

<u>Failure to Report and Pay for Site Licenses</u>

105.     A second example of Adobe's failure to pay royalties properly due under the License Agreements was its failure to report Sales under "site licenses" to certain customers that grant the licensee the right to use a specific maximum number, or even unlimited use within an entire organization, of Adobe products that contain Dolby Technologies.  Thus, for example, Adobe has provided site licenses to at least 76 colleges and universities for use by their staff and their students.  On information and belief, Adobe also Sold broad site licenses to numerous large private enterprise customers as well.

106.     In breach of the License Agreements, Adobe did not report the total number of Sales encompassed by such site licenses and instead reported and paid for only the number of products that Adobe's customers purportedly "deployed" under the site licenses that Adobe granted.  For example, if Adobe Sold a customer the license right to use 100,000 Adobe products for a set fee, but the customer later represented to Adobe that it only "deployed" 50,000 of the seats, then Adobe has stated that it would only report 50,000 Sales to Dolby, or half of the licenses Adobe actually Sold under that license.

107.     There is no basis under the License Agreements for reporting only units of software products that are deployed; the License Agreements do not condition a Sale and

1  applicable royalties upon any subsequent act of delivery, deployment, download, or anything

2  else.  Rather, the License Agreements are clear and unambiguous that Adobe is obligated to

3  report and pay a royalty on each license it grants, regardless of any other act by Adobe or its

4  customers.

5  108.     In addition to having no contractual basis, conditioning the payment of a royalty

6  on subsequent conduct by Adobe's customers would be inconsistent with fundamental business

7  and licensing principles.  For example, if Adobe licenses a customer for its Creative Cloud

8  subscription service, it does not condition payment of the subscription fee on whether that

9  customer actually accesses or uses the service.  In the same way, if a DVD player containing a

10  Dolby implementation is sold to a customer, a royalty obligation is triggered from the licensee

11  whether or not that customer turns on and uses the DVD player.  Requiring some future action

12  from the customer as a predicate to the payment of a royalty therefore has no basis in contract or

13  in common sense.  This is particularly true since Dolby would have no way to verify the number

14  of licenses "deployed" by Adobe's customers because Dolby does not have a direct relationship

15  with Adobe's customers related to these Adobe products.  In order to avoid this very problem,

16  Adobe promised in the License Agreements to report a Sale to Dolby when Adobe first licenses

17  or invoices its product, and not on any subsequent action, by Adobe or the customer.

18  <u>Improper Reporting and Payment for Multiple Sales to a Single Customer</u>

19  109.     A third example of the strategies used by Adobe to avoid payment of royalties

20  owed under the License Agreements was improperly reporting multiple Sales of products to one

21  of its customer.  In situations where a single customer made successive purchases of multiple

22  different products from Adobe containing Dolby Technologies, Adobe did not fully report the

23  total number of software products licensed to such customers.  Instead, Adobe chose to only

24  report the "highest" level of Dolby Technology contained in a single product licensed to a single

25  customer, regardless of the total number of separate Adobe software products licensed to that

26  customer.

27  110.     This practice is contrary to Adobe's obligations in the License Agreements.  None

28  of Adobe's commitments to report and pay for the Sale of a Licensed Product is excused, in any

27

way, if a Sale of a separate Licensed Product happens to be made to the same Adobe customer. In fact, the License Agreements specify that Adobe will pay for each Licensed Product separately, at the time the license to each product is first granted.  *See, supra*, ¶ 39 (Adobe will pay royalties to Dolby on "all" Licensed Products Sold), ¶¶ 40 and 56 (a product is Sold when it "is first licensed for use"); *see also* ¶ 29 (requiring Adobe to report "each" Licensed Device in a Licensed Product Sold).

<u>Misreporting of Professional Products</u>

111.     A fourth example of Adobe's tactics to avoid the proper payment of royalties is its misreporting of certain professional products.  Adobe has a variety of "Professional Products" that Adobe identified in its Professional Pricing Letters with Dolby and in Adobe's various filings with the Securities and Exchange Commission describing its business.  The Professional Pricing Letters set forth specific criteria that must be established in order for the license granted therein, and the special pricing provided for therein, to apply.

112.     Adobe has Sold many Professional Products that do not meet the criteria set forth in the Professional Pricing Letters because they either lack the required technologies, or have only one of the required technologies combined with a non-qualifying technology.  These Professional Products include, but are not limited to, After Effects, Encore, Media Encoder, and Premiere Pro.  These professional product Sales are therefore unlicensed.  Again, the 2012 System Agreement and the DCP Addendum only cover Adobe's "consumer" products.

113.     For any unlicensed Sales of Adobe products containing Dolby Technologies, Adobe has breached the express covenant in Section 8.3 of the 2012 System Agreement that Adobe "will not make, use, Sell or import a product containing Dolby IP if such product violates intellectual property rights of [Dolby]" or alternatively the implied negative covenant contained in each license that Adobe would not use Dolby Technology beyond the scope set forth in such licenses.

114.     For any unlicensed Sales of Adobe products containing Dolby Technologies, Adobe has also infringed Dolby's copyright rights in the Dolby Copyrighted Works by Selling such products without a license to do so.

<u>Failure to Report and Pay for Upgrades</u>

115.    A fifth example of Adobe's breaches is its failure to properly report product upgrades to Dolby and pay any corresponding royalty.  Under the Software Distribution Policies, an additional Sale occurs and must be reported and paid for if (1) a version of a Licensed Product contains a change to any Dolby Technology from a previously fully reported and paid version; (2) Adobe uses Dolby trademarks or technology to promote the Adobe product; or (3) if Adobe changes the name or major version number (*e.g.*, Lightroom 5 to 6).

116.    By their terms, the Software Distribution Policies only apply to Dolby's license agreements for consumer software.  The Software Distribution Policies therefore do not apply to any Professional Software Licensed Products that were covered by the 2012 Professional Pricing Letter, the 2013 Professional Pricing Letter, and the 2013 Subscription Letter.  Instead, the only "Royalty Exemptions" for Professional Software Licensed Products are set forth at Section 4 of the August 2013 Professional Pricing Letter and Section 3 of the August 2013 Subscription Letter as: (1) Eligible Licensed Products provided to Adobe's end users as a time-limited trial version not to exceed 30 days; and (2) a pre-release or beta version of the Eligible Licensed Product, provided that the end user has signed a confidentiality agreement and that the use of the Eligible Licensed Product will be limited to the pre-release period.

117.    In providing its products on a subscription basis through the cloud, Adobe constantly provides new versions of its software products.  Adobe has highlighted, in its various filings with the Securities and Exchange Commission, Creative Cloud's ability to deliver "frequent updates" and "new products and exclusive updates as they are developed," providing its customers ready access to the latest product version or new products through the cloud.  Adobe stresses that, as part of its digital media strategy, Adobe is focused on the constant delivery of new and improved products through Creative Cloud.

118.    In material breach of the License Agreements, Adobe simply chose to stop reporting and paying the royalties owed to Dolby for Upgrades of software products once Adobe chose to Sell these products in the cloud.  On information and belief, the Upgrades provided by Adobe to its consumer software products included changes to the implementation of Dolby

COMPLAINT                                           CASE NO.

Technologies and/or included name changes and/or major version number changes to those

products, thereby triggering reporting and payment obligations for all such Upgrades.  Moreover,

any new version of an unlicensed Adobe product containing Dolby Technologies gives rise to

additional copyright infringement and damages.

<u>Misreporting the Dolby Technology Contained in Adobe Products</u>

119.     A sixth example of Adobe's breaches is its misreporting of Dolby Technologies

contained in Adobe products.  Section 4.6 of the 2012 System Agreement requires Adobe's

quarterly reports to Dolby to contain all Sales of Licensed Products, including the Dolby

Technologies contained therein as part of Dolby's then-current standard reporting procedure.  In

breach of that provision, Adobe misreported the Dolby Technologies contained in its products.

120.     For example, despite subsequently admitting that its Media Encoder product

contains Dolby Technology, Adobe never reported this product to Dolby as being Sold either

individually or bundled in a collection with other Adobe products.

121.     In other instances, Adobe later informed Dolby that an Adobe product contained a

different package of Dolby Technology than Adobe had previously specified in its testing

submissions to Dolby and/or its royalty reporting to Dolby.  Other products misreported to Dolby

at various times include, without limitation:  After Effects and Premiere Pro.

122.     To the extent that Adobe submitted products for testing under the 2012 System

Agreement (§§ 2.2, 2.4) or 2003 L3 Agreement (§§ 5.01, 5.02) but the products it Sold did not

conform with the product tested and approved by Dolby, Adobe breached those provisions of the

License Agreements.

<u>Misapplication of the August 2013 Subscription Letter</u>

123.     Between the second calendar quarter of 2012 and the first calendar quarter of

2017, Adobe's Creative Cloud subscription service has included at least the following Adobe

products containing Dolby Technologies: After Effects, Audition, Encore, Lightroom, Media

Encoder, Prelude, and Premiere Pro.

124.     The August 2013 Subscription Letter's special pricing applies only to Adobe's

Creative Cloud Professional Software services and the Professional Software Licensed Products

30

accessible through Creative Cloud that include and incorporate DD+ Professional Encoder (up to 7.1 channels) and DD+ Professional Decoder (up to 7.1 channels), and that may also include Dolby E Professional Encoder or Dolby E Professional Decoder.

125.     Notwithstanding Adobe's description of Creative Cloud as offering Professional Software, only one Adobe professional product offered as part of Creative Cloud—Audition— met the criteria for the August 2013 Subscription Letter because only it contained both the DD+ Professional Decoder and DD+ Professional Encoder (both up to 7.1 channels).

126.     Accordingly, with the one exception of Audition, on information and belief, any and all products reported under the August 2013 Subscription Agreement were reported in error and in breach of the License Agreements.

## Adobe's Licenses Expire

127.     On or about September 30, 2017, each and all of the License Agreements then in existence between Dolby and Adobe expired, in accordance with Appendix A1 to the 2012 System Agreement and DCP Addendum.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

128.     Dolby hereby repeats and incorporates the allegations of paragraphs 1 through 127 above as though fully set forth herein.

129.     As noted in paragraph 21 above, plaintiffs Dolby Laboratories and/or Dolby Licensing own copyrights in the Dolby Copyrighted Works.  The Dolby Copyrighted Works include the following computer programs and/or computer software works (collectively, the "Asserted Dolby Works"):

- the Dolby AC-3 decoder BSI data unformatting source code;
- the Dolby AC-3 mantissa unpacking routine;
- the Dolby AC-3 mantissa unpacking subroutine;
- the Dolby AC-3 fixed data unpacking routine;
- the Dolby Audio Block Encoder Module;

31

- the Dolby Re-entrant revision of DD+ encoder auxiliary data packing routines;
- the Dolby Bitstream Information (BSI) Module for encode routines – DDP;
- the Dolby Bitstream Information (BSI) Module for encode routines – DD; and
- the Dolby CRC encoder module calculation routines.

Dolby Licensing's claims to copyright in each of the Asserted Dolby Works have been registered with the U.S. Copyright Office or are the subject of pending applications for registration.

130. The Asserted Dolby Works are original, creative works of authorship and copyrightable subject matter under the laws of the United States. Dolby Laboratories and Dolby Licensing have complied in all respects with the Copyright Laws of the United States, and the Register of Copyrights has issued to Dolby Licensing, or Dolby Licensing has applied for, Certificates of Registration for each of the Asserted Dolby Works.

131. The Dolby Copyrighted Works are original, expressive works of authorship that have been developed through many years and hundreds if not thousands of hours of creative endeavor by Dolby Laboratories and Dolby Licensing. The Dolby Technologies have been continuously updated and improved by Dolby over many years to incorporate additional creative expression developed by Dolby Laboratories and Dolby Licensing, including numerous versions of the Dolby Copyrighted Works that were created for different settings and particular uses and applications. Each of the Asserted Dolby Works is the product of a substantial number of hours of Dolby Laboratories and Dolby Licensing employees' time, and is protected under the Copyright Laws of the United States from unlawful and unauthorized copying and distribution.

132. Adobe has infringed Dolby Licensing's copyrights in the Asserted Dolby Works and Dolby Licensing's exclusive rights under the Copyright Laws by reproducing and selling, without a license to do so, Adobe products that include the Asserted Dolby Works, portions thereof, and/or works that are based on or are derivative thereof (the "Adobe Infringing Products"), and by inducing others to reproduce and sell the Adobe Infringing Products. Although the complete scope of Adobe's infringement and the names of all of the Adobe Infringing Products are not known to Dolby, examples of the Adobe Infringing Products that are

32

1   not licensed or authorized by Dolby are the Adobe products named After Effects, Encore, Media

2   Encoder, and Premiere Pro.

3       133.    Upon information and belief, the infringed elements of the Asserted Dolby Works

4   include the code contained in those works; the structure, organization and content of the works;

5   and the content and organization of documentation and other materials relating to the Dolby

6   Technologies embodied in those works.

7       134.    Upon information and belief, Adobe has distributed the Adobe Infringing

8   Products to numerous companies and individuals, with the understanding and intention that those

9   companies and individuals would reproduce and distribute the Adobe Infringing Products to third

10  parties, all with the purpose of encouraging and promoting the unauthorized reproduction,

11  distribution and use of the Adobe Infringing Products. Users of the Adobe Infringing Products

12  must copy and use infringing elements of the Adobe Infringing Products to use those products, in

13  violation of Dolby Licensing's exclusive copyright rights. Such use is not licensed or authorized

14  by Dolby Licensing. Adobe has thus induced, caused, and materially contributed to the

15  infringing acts of others by encouraging, inducing, allowing and assisting others to copy,

16  reproduce and distribute the Adobe Infringing Products.

17      135.    Upon information and belief, Adobe's direct and induced infringements of Dolby

18  Licensing's copyrights in the Asserted Dolby Works are and have been knowing, deliberate, and

19  willful.

20      136.    By its unauthorized copying, use, and distribution of the Asserted Dolby Works

21  and the Adobe Infringing Products, Adobe has violated Dolby Licensing's exclusive rights under

22  17 U.S.C. § 106.

23      137.    Adobe has realized unjust profits, gains, and advantages as a proximate result of

24  its infringement.

25      138.    Adobe will continue to realize unjust profits, gains, and advantages as a proximate

26  result of its infringement as long as its infringement is permitted to continue.

27      139.    Dolby Licensing is entitled to injunctive relief restraining Adobe from engaging

28  in any further such acts in violation of the United States copyright laws. Unless Adobe is

COMPLAINT                                              CASE NO.

1    enjoined and prohibited from infringing Dolby Licensing's copyright rights and inducing others

2    to infringe Dolby Licensing's copyright rights, Adobe will continue to intentionally infringe and

3    induce infringement of Dolby Licensing's registered copyrights.

4        140.    As a direct and proximate result of Adobe's direct and indirect willful copyright

5    infringement, Dolby Licensing has suffered, and will continue to suffer, monetary loss to its

6    business, reputation, and goodwill.  Dolby Licensing is entitled to recover from Adobe, in

7    amounts to be determined at trial, the damages Dolby Licensing has sustained and will sustain,

8    and any gains, profits, and advantages obtained by Adobe as a result of Adobe's acts of

9    infringement and Adobe's sale and distribution of the Adobe Infringing Products.

10   **COUNT TWO**

11   BREACH OF CONTRACT

12       141.    Dolby hereby repeats and incorporates the allegations of paragraphs 1 through

13   140 above as though fully set forth herein.

14       142.    The License Agreements were and are valid and enforceable contracts supported

15   by adequate, mutual consideration.

16       143.    Dolby has performed each and every one of its material obligations under the

17   License Agreements, except for any obligation that has been excused as a result of Adobe's

18   breach.

19       144.    By failing to accurately report and pay royalties for its Sale of products containing

20   Dolby Technology and failing to comply with its other contractual obligations, Adobe has

21   separately and independently materially breached, *inter alia*, Sections 2.2, 2.4, 4.2, 4.6, 4.7 and

22   6.1 of the 2012 System Agreement; Sections 4.02, 4.04, 4.05, 4.08, 5.01 and 5.02 of the 2003 L3

23   Agreement; Section 1 and Appendices B1 and C of the DCP Addendum; Sections 1, 2, 3 and 4

24   of the September 2012 Professional Pricing Letter; Sections 1, 2, 3 and 5 of the August 2013

25   Professional Pricing Letter; Sections 1, 2 and 4 of the 2013 Subscriber Letter; and the 2009,

26   2013, and 2015 Software Distribution Policies.

27       145.    Dolby has been damaged by Adobe's breaches of contract in an amount to be

28   determined at trial.

COMPLAINT                                          CASE NO.

**COUNT THREE**

BREACH OF REPRESENTATION AND WARRANTY

146.     Dolby hereby repeats and incorporates the allegations of paragraphs 1 through 145 above as though fully set forth herein.

147.     The License Agreements were and are each valid and enforceable contracts supported by adequate, mutual consideration.

148.     Dolby has performed each and every one of its material obligations under the License Agreements, except for any obligation that has been excused as a result of Adobe's breach.

149.     Each of the License Agreements grants a license of specifically-defined scope for the use of Dolby Technology.

150.     Section 8.3 of the 2012 System Agreement provides that "[Adobe] represents and warrants…that it will not make, use, Sell or import a product containing Dolby IP if such product violates intellectual property rights of [Dolby]…"

151.     Adobe breached its promise not to exceed the scope of the licenses granted by the License Agreements by Selling products containing Dolby Technology that were not included within the scope of the licenses granted by Dolby.

152.     Dolby has been damaged by Adobe's breach of contract in an amount to be determined at trial.

**COUNT FOUR**

BREACH OF IMPLIED COVENANT

153.     Dolby hereby repeats and incorporates the allegations of paragraph 1 through 152 above as though fully set forth herein.

154.     The License Agreements were and are each valid and enforceable contracts supported by adequate, mutual consideration.

155.     Dolby has performed each and every one of its material obligations under the License Agreements, except for any obligation that has been excused as a result of Adobe's breach.

COMPLAINT                                      CASE NO.

156.     Each of the License Agreements grants a license of specifically-defined scope for use of Dolby Technology.

157.     Dolby provided Adobe a vast quantity of additional intellectual property, including trade secrets, confidential know-how, copyrighted source code, and rights to use Dolby's trademarks to promote Adobe's products.  Dolby also provided substantial amounts of Dolby's other proprietary technical information and materials, including testing information, manuals, and other deliverables.

158.     Dolby's delivery of this valuable package of information to Adobe and the parties' collaboration to implement Dolby Technologies in Adobe products gave rise in each License Agreement between Dolby and Adobe to an implied negative covenant that Adobe would not exceed the scope of the licenses granted therein.

159.     Adobe breached the implied covenant not to exceed the scope of the licenses granted by the License Agreements by Selling products containing Dolby Technology that were not included within the scope of those license agreements.

160.     Dolby has been damaged by Adobe's breach of the implied covenant in an amount to be determined at trial.

## **COUNT FIVE**

### SPECIFIC PERFORMANCE OF AUDIT RIGHTS

161.     Dolby hereby repeats and incorporates the allegations of paragraphs 1 through 160 above as though fully set forth herein.

162.     The License Agreements were and are valid and enforceable contracts supported by adequate, mutual consideration.

163.     Dolby has performed each and every one of its material obligations under the License Agreements, except for any obligation that has been excused as a result of Adobe's breach.

164.     Adobe has breached Section 4.7 of the 2012 System Agreement and Section 4.08 of the 2003 L3 Agreement by failing to permit Dolby's auditor to inspect, examine and make abstracts of Adobe's books and records so as to verify the accuracy of Adobe's reporting, failing

36

1  to cooperate with the audit, and failing to provide the auditor with reasonable access to all

2  required information that would allow the audit to be completed in a timely manner.  Adobe has

3  further breached the License Agreements by failing to provide Dolby access to "(i) all

4  information (including information not related to Sales of Licensed Products necessary to verify

5  the integrity of [Adobe's] records and accuracy of [Adobe's] Quarterly Reports), and (ii) relevant

6  personnel requested by [Dolby] or [Dolby's] agents as necessary to allow the examination to be

7  completed in a timely manner."

8       165.     Dolby seeks preliminary and permanent relief from this Court ordering that

9  Adobe specifically perform under Section 4.7 of the 2012 System Agreement and Section 4.08 of

10  the 2003 L3 Agreement by providing Dolby with complete auditable information from the

11  aggregate inspection period from January 2012 through the most recent quarter.  This relief is

12  necessary to preserve the status quo between the parties, which is the legally relevant contractual

13  relationship in existence before the controversy between the parties arose.

14       166.     In the event that the audit results in a finding of Unpaid Royalties for any

15  consecutive four quarter period exceeding 5% of the total royalties due during such period,

16  Adobe must pay for the full cost of any examination and collection undertaken by or for Dolby

17  including all accounting, audit and legal fees and costs, plus interest at the rate of 1.5% per

18  month.

19       167.     Dolby also seeks compensatory damages arising from Adobe's failure to comply

20  with the audit provisions between January 2015 and January 2018, including all audit-related

21  fees and costs incurred by Dolby prior to the commencement of this litigation.

## PRAYER FOR RELIEF

23       WHEREFORE, plaintiffs Dolby Licensing and Dolby International pray for relief and

24  judgment as follows:

25       A.     For entry of judgment holding Adobe liable for infringement of Dolby

26            Licensing's copyright rights in the Asserted Dolby Works;

27       B.     For an order temporarily, preliminarily and thereafter permanently enjoining

28            Adobe, its officers, agents, servants, employees, attorneys and affiliated

37

1    companies, its assigns and successors in interest, and all persons in active concert

2    or participation with it, from continued acts of infringement of the copyrights in

3    the Asserted Dolby Works;

4    C.    For an order that all copies of any Adobe Infringing Products made or used in

5    violation of Dolby Licensing's copyright rights, and all means by which such

6    copies may be reproduced, be impounded and destroyed or otherwise reasonably

7    disposed of;

8    D.    For an order awarding Dolby Licensing statutory damages, actual damages,

9    and/or profits, according to proof, resulting from Adobe's infringement of the

10    copyrights in the Asserted Dolby Works, together with prejudgment and post-

11    judgment interest;

12    E.    For an order awarding Dolby Licensing its costs and attorneys' fees under 17

13    U.S.C. § 505;

14    F.    For an award of compensatory damages in an amount according to proof;

15    G.    For an award of prejudgment interest at the legal rate through the date of the

16    judgment and/or at the contractual rate set forth by Section 4.8 of the 2012

17    System Agreement;

18    H.    For preliminary and permanent injunctive relief for specific performance that

19    Adobe must comply with its audit obligations as set forth in the License

20    Agreements;

21    I.    For full costs of the audit including all accounting, audit, and legal fees as set

22    forth by Section 4.8 of the 2012 System Agreement;

23    J.    For an award of attorneys' fees and costs incurred herein as provided by contract;

24    and

25    K.    For any and all other legal and equitable relief as may be available under law and

26    that the Court may deem proper.

27

28

COMPLAINT                                              CASE NO.

1

**DEMAND FOR A JURY TRIAL**

2

In accordance with Rule 38 of the Federal Rules of Civil Procedure, plaintiffs Dolby

3

Licensing and Dolby International demand a trial by jury of all issues so triable.

4

Dated:  March 12, 2018                              Respectfully submitted,

5

6

KING & SPALDING LLP

7

8

By:  /s/  *Timothy T. Scott*

9                                                                  Timothy T. Scott
                                                                   KING & SPALDING LLP

10                                                                 601 South California Avenue #100
                                                                   Palo Alto, CA 94304

11                                                                 Telephone:  (650) 422-6700
                                                                   Facsimile:    (650) 422-6800

12

13                                                                 Attorneys for Plaintiffs
                                                                   Dolby Laboratories Licensing Corporation

14                                                                 and Dolby International AB

15

16

17

18

19

20

21

22

23

24

25

26

27

28