CHARLES C. CORRELL, JR. (SBN 258085)
ccorrell@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

BRUCE W. BABER (admitted *pro hac vice*)
bbaber@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone:    (404) 572-4600
Facsimile:    (404) 572-5100

*Additional counsel listed on signature page*

Attorneys for Plaintiffs Dolby Laboratories Licensing
Corporation and Dolby International AB and
Counterclaim-Defendant Dolby Laboratories, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| DOLBY LABORATORIES LICENSING CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ADOBE INC. f/k/a ADOBE SYSTEMS INCORPORATED, <br><br> Defendant. <br> _____ <br> ADOBE INC. f/k/a ADOBE SYSTEMS INCORPORATED, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> DOLBY LABORATORIES LICENSING CORPORATION, et al., <br><br> Counterclaim-Defendants. | Case No. 4:18-cv-01553-YGR <br><br> Hon. Yvonne Gonzalez Rogers <br><br> **PLAINTIFFS' AND COUNTERCLAIM-DEFENDANT'S MOTION TO EXCLUDE/STRIKE EXPERT TESTIMONY OF ADOBE EXPERTS STEVEN KURSH, SCHUYLER QUACKENBUSH AND CHRISTIAN TREGILLIS** <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** <br><br> Date:     October 23, 2019 <br> Time:     2:00 p.m. <br> Location: Courtroom 1, 4th Floor |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................................... 1

RELIEF REQUESTED .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

   INTRODUCTION ....................................................................................................... 2

   LEGAL STANDARD.................................................................................................. 4

   ARGUMENT AND AUTHORITIES ........................................................................ 5

   I.   The Court Should Exclude The Testimony Of Steven Kursh........................... 5

      A.  Kursh's Methodology And Opinions................................................... 5

      B.  Kursh's Opinions Are Based Solely On His Ipse Dixit And Unreliable. ................... 6

      C.  Kursh Impermissibly Interprets The Parties' Contracts.............................. 8

      D.  Certain Opinions Of Kursh Also Lack Foundation. ................................... 10

   II.  Schuyler Quackenbush's Opinion 2 And Opinion 4 Should Be Excluded....................... 12

      A.  Quackenbush Opines On The Copyrightability Of Dolby's Technologies. ............... 12

      B.  Quackenbush's Legal Opinions On Copyrightability Are Inadmissible. .................. 12

      C.  Quackenbush's Opinions Are Based On Erroneous Legal Conclusions. ................... 13

   III. The Court Should Exclude Certain Opinions of Christian Tregillis.............................. 15

      A.  Tregillis Offers Factual Narratives, Not Opinions..................................... 15

      B.  Tregillis's Factual Narratives Will Not Assist The Trier Of Fact. ........................... 15

      C.  Tregillis's Rebuttal Report Also Offers Impermissible Legal Opinions. ................... 18

   CONCLUSION......................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Actuate Corp. v. Aon Corp.*,
  No. C 10-05750 WHA, 2012 WL 2285187 (N.D. Cal. June 18, 2012)................................8, 9

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3d Cir. 1983)..................................................................15

*Atari Games Corp. v. Nintendo of Am., Inc.*,
  No. C 88-4805 FMS, 1993 WL 214886 (N.D. Cal. Apr. 15, 1993) ........................................12

*Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve*,
  LLC, No. 1:14-CV-001445-JLT, 2016 WL 3538250 (E.D. Cal. June 28, 2016)....................8

*Bona Fide Conglomerate, Inc. v. SourceAmerca*,
  No. 3:14-CV-00751-GPC-AGS, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019)................8, 18

*Cisco Sys., Inc. v. Hewlett-Packard Co.*,
  No. 2015-1-CV-284707 (Super. Ct. Santa Clara County, May 3, 2018).................................9

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ...................................................................4

*Crow Tribe of Indians v. Racicot*,
  87 F.3d 1039 (9th Cir. 1996) ................................................................8, 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)..................................................................... *passim*

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
  299 F.3d 1053 (9th Cir. 2002) ...................................................................4

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12–cv–03587–WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ....................15, 16, 18

*GPNE Corp. v. Apple, Inc.*,
  No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ......................6, 7, 11

*Infogroup, Inc. v. DatabaseUSA.com LLC*,
  No. 8:14-CV-49, 2018 WL 3826684 (D. Neb. Aug. 10, 2018) ..............................................13

*Johns v. Bayer Corp.*,
  No. 09 CV 1935 AJB DHB, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013)........................16

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
  886 F.2d 1173 (9th Cir. 1989) ..........................................................13, 14, 18

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)..................................................................7

*Lust v. Merrell Dow Pharms., Inc.*,
    89 F.3d 594 (9th Cir. 1996) .................................................................................4

*In re Novatel Wireless Sec. Litig.*,
    846 F. Supp. 2d 1104 (S.D. Cal. 2012).................................................13, 14, 15

*Pac. Gas & Elec. Co.*,
    2016 WL 1640462 ...........................................................................................18

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
    291 Fed. App'x 40 (9th Cir. 2008) ...............................................................8, 19

*Sega Enterprises Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) .........................................................................14

*Stardock Sys., Inc. v. Reiche*,
    No. C 17-07025, 2018 WL 7348858 (N.D. Cal. Dec. 27, 2018) ......................13

*Ticketmaster Corp. v. Tickets.com, Inc.*,
    No. CV 99-07654 HLH, 2003 WL 25781901 (C.D. Cal. Feb. 10, 2003)........13, 18

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*
    *Prod. Liab. Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) ..........................................................4, 7

*Turner Const. Co. v. Nat'l Am. Ins. Co.*,
    No. C-03-1227 SBA, 2004 WL 6066675 (N.D. Cal. Sept. 20, 2004) ...................9

*United States v. Pac. Gas & Elec. Co.*,
    No. 14-cr-00175-THE, 2016 WL 160462 (N.D. Cal. Apr. 26, 2016) ...................16

*In re W. Asbestos Co.*,
    416 B.R. 670 (N.D. Cal. 2009), *aff'd sub nom. Renfrew v. Hartford Acc. &*
    *Indem. Co.*, 406 Fed. App'x 227 (9th Cir. 2010).................................................8

**Statutes**

17 U.S.C. § 101...................................................................................................14

17 U.S.C. § 501...................................................................................................19

17 U.S.C. § 106...................................................................................................19

Cal. Civ. Code § 1636.........................................................................................10

Fed. R. Evid. 702.....................................................................................1, 2, 4, 5

**Other Authorities**

Fed. R. Evid. 702 advisory committee's note.......................................................5

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 23, 2019 at 2:00 p.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, 4th Floor, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Yvonne Gonzalez Rogers, Plaintiffs and Counterclaim-Defendants Dolby Laboratories Licensing Corporation and Dolby International AB and Counterclaim-Defendant Dolby Laboratories, Inc. (collectively, "Dolby") will, and hereby do, move pursuant to Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude and/or strike certain testimony of Defendant and Counterclaim-Plaintiff Adobe Inc.'s expert witnesses Steven Kursh, Schuyler Quackenbush and Christian Tregillis.

## RELIEF REQUESTED

Dolby requests that the Court (1) exclude the testimony of Steven Kursh, in its entirety, or in the alternative, strike Paragraphs 97-99, 101, 114, and 126-214 of the Expert Report of Steven Kursh, and Paragraphs 34-40, and 67-98 of the Expert Rebuttal Report of Steven Kursh, and exclude him from offering any testimony on or regarding the subjects covered by those paragraphs; (2) strike Paragraphs 157-174 (Opinion 2), and 218-224 (Opinion 4) of the Expert Report of Schuyler Quackenbush, and exclude him from offering any testimony on or regarding the subjects covered by those paragraphs; and (3) strike Paragraphs 156 (Section 3.1.4), 160-185 (Section 3.2), 203-207 (Section 3.5), and 228-231 (Section 3.6.5) of the Expert Rebuttal Report of Christian Tregillis, and exclude him from offering any testimony on or regarding the subjects covered by those paragraphs.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Adobe Inc. ("Adobe") retained three experts to support its positions in this action: (1) Dr. Steven Kursh ("Kursh"); (2) Dr. Schuyler Quackenbush ("Quackenbush"); and (3) Christian Tregillis ("Tregillis"). Pursuant to Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Plaintiffs and Counterclaim-Defendants Dolby Laboratories Licensing Corporation and Dolby International AB, and Counterclaim-Defendant Dolby Laboratories, Inc. (collectively, "Dolby") move to strike certain paragraphs from each expert's reports and rebuttal reports, and Kursh's opinions in their entirety, and to exclude these experts from testifying to those matters at trial because they seek to offer opinions that are unreliable, unhelpful to the trier of fact, and improperly state legal opinions.

***Steven Kursh, Ph.D., CSDP, CLP.*** The Court should exclude Kursh's testimony because he has no reliable methodology. Kursh's opinions concerning industry "custom and practice" rest solely on his general 30 years of experience. He offers no source or explanation for what is, in fact, any claimed industry custom or practice. Instead, his opinions are classic, impermissible *ipse dixit*, untestable and unreliable, and should be excluded in their entirety.

In addition, Kursh's opinions in his expert report (Ex. A at ¶¶ 97-99, 101, 114, 126-214) and Opinion III(C) in his rebuttal report (Ex. B at ¶¶ 67-98) constitute impermissible legal opinions.[1] Under the guise of opining about industry "customs and practices," Kursh instead sets forth his own rules for interpreting contracts, discusses contract terms, considers extrinsic evidence of Adobe's choosing, and then gives his own reading of the license agreements. But it is the Court's—not an expert's—role to instruct the jury on the appropriate legal standards, and it is the Court's (or jury's)—not an expert's—role to weigh evidence and give meaning to the terms of the parties' contracts. Finally, Kursh offers a technical opinion about ███████████ ███████████████████████████████████████████, but admitted at his

---

[1] All exhibits are attached to the Declaration of Charles C. Correll, Jr., submitted herewith.

deposition he never looked at the source code for any Adobe products, which would be required to render such an opinion. While Kursh should be excluded from testifying altogether, at the very least he should be excluded from providing any testimony regarding the meaning or interpretation of the parties' agreements and ███████████████████████████████ ████████████████████████, and the paragraphs of his reports that do so should be stricken.

**_Schuyler Quackenbush, Ph.D._** Quackenbush purports to give opinions that are based on an "understanding" of copyright law that was provided to him by Adobe's counsel and is flatly inconsistent with governing Ninth Circuit law, including the well-settled rule that a copyright in the source code for computer programs protects the code whether in source code or compiled object code form. Quackenbush also seeks to offer improper and erroneous legal opinions, such as his assertion that ██████████████████████████████████████ ██████████████████████████. Ex. D, Quackenbush Report ¶¶ 157-174 (Opinion 2), 218-224 (Opinion 4). But whether computer code is copyrightable is a legal conclusion for the Court and not a proper subject of expert testimony. Accordingly, Quackenbush should be excluded from offering his Opinion 2 (¶¶ 157-174) and Opinion 4 (¶¶ 218-224).

**_Christian Tregillis, CPA, ABV, CFF, CLP._** Dolby seeks to exclude certain opinions by Tregillis that simply rehash facts and usurp the role of counsel and jury at trial. Tregillis should be excluded from opining on ███████████████████████████████████ █████████████████████ (Ex. H, Tregillis Rebuttal ¶¶ 160-185) because Tregillis admits he has no opinions on the matters but is instead offering "observations" of facts and inferences that he believes can be drawn from them, thereby supplanting the role of counsel to argue the case and the jury's role to draw inferences from the evidence. Tregillis's purported "opinion" should be stricken and Tregillis should be excluded from offering any such testimony.

Finally, Tregillis parrots in his rebuttal report some of the improper legal conclusions of Quackenbush and Kursh with respect to copyright (*id.* at ¶¶ 156, 203-207) and contract interpretation (*id.* at ¶¶ 228-231). These opinions are as inadmissible coming from Tregillis as they are from Kursh and Quackenbush, and should also be excluded.

3

**LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  It provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," but only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  FED. R. EVID. 702.

"Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 589).  Under *Daubert*, "[t]he trial court acts as a 'gatekeeper' to exclude expert testimony that does not meet the relevancy and reliability threshold requirements." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citing *Elsayed Mukhtar*, 299 F.3d at 1063). And "[i]t is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

"If evidence lacks either reliability or relevance, it must be excluded." *Cooper*, 510 F.3d at 942.  "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper*, 510 F.3d at 942.  "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central concern' of Rule 702." *Elsayed Mukhtar*, 299 F.3d at 1063 n. 7 (citation omitted).  "Reliability" means that the testimony must be based upon "sufficient facts and data," and "the product of reliable principles and methods," which have been "reliably applied" to the "facts of the case." FED. R. EVID. 702(b)-(d).  "An expert who relies solely or primarily on his experience 'must explain how that experience leads to the conclusions reached, *why that experience is a sufficient basis for the opinion*, and how that experience is reliably applied to the facts.'" *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1067 (C.D. Cal. 2013) (original emphasis) (quoting Fed. R. Evid. 702 advisory

committee's note (2000)).  The Court's "gatekeeping function requires more than simply 'taking the expert's word for it.'"  FED. R. EVID. 702 advisory committee's note (2000).

**ARGUMENT AND AUTHORITIES**

**I.  The Court Should Exclude The Testimony Of Steven Kursh.**

    **A.  Kursh's Methodology And Opinions.**

    Kursh purports to be an expert on "customs and practices in the software industry." Kursh claims he has over 30 "███████████████████████████" Ex. C, Kursh Dep. 15:8-21. According to Kursh, his opinions "█████████████████████████████████████" by Adobe's counsel and his "██████████████████████████" Ex. A, Kursh Report ¶¶ 14, 15.  Kursh described his methodology as follows:

[REDACTED]

Ex. C, Kursh Dep. 14:21-15:21.

    But while Kursh repeatedly references "customs and practices," he never provides any basis for them, except to occasionally cite a source on contract drafting.  And while he denies

5

offering "legal opinions," it is clear that Adobe intends to use Kursh to opine on issues of contract interpretation. Kursh's reports establish that he will ███████████████████ ███████████████████████████████████ (Ex. A, Kursh Report ¶¶ 82-88); ████████ ████████████████████████████████████████████ (*id.* at ¶¶ 126-158); ████████ █████████████████████████████████████████ (*id.* at ¶¶ 97-99, 101, 114, 159-173); █ ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ (*id.* at ¶¶ 174-184, 185-190); ████████████ ███████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████ (*id.* at ¶¶ 191-214); and ███████████████████████████████████████████████████████████████████████ ████████████████████████████████. Ex. B, Kursh Rebuttal ¶¶ 67-98. These are all opinions seeking to give meaning to contract terms.

## B. Kursh's Opinions Are Based Solely On His *Ipse Dixit* And Unreliable.

"Experts must follow some discernable methodology, and may not be 'a black box into which data is fed at one end and from which an answer emerges at the other.'" *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (citation omitted). Kursh's opinions are based nearly entirely on his over 30 "years of experience in the industry," with only a few passing references to ████████████████████ ████████. *See* Ex. C, Kursh Dep. 15:8-21. For most opinions, Kursh fails to cite *any* source to show what "industry and customs" are in this context. Instead, Kursh's "methodology" consisted of reviewing, "████████████████████████████████████████████ ████████" documents and information selected and provided by Adobe's counsel. Ex. C, Kursh Dep. 14:21-15:1; *see also* Ex. A, Kursh Report ¶¶ 14, 15.

But Kursh's "'30 years of experience' alone does not constitute a sufficiently reliable and testable methodology to prevent exclusion under *Daubert*." *GPNE Corp.*, 2014 WL 1494247, at *5. "An expert who relies solely or primarily on his experience," like Kursh, "'must explain how that experience leads to the conclusions reached, *why that experience is a sufficient basis for*

6

*the opinion*, and how that experience is reliably applied to the facts.'" *In re Toyota Motor Corp.*, 978 F. Supp. 2d at 1067 (original emphasis) (quoting FED. R. EVID. 702 advisory committee's note (2000)). Kursh does none of that.

In *GPNE Corp.*, an expert offered an opinion, based on his "general reliance upon 'all the evidence in the record' and his '30 years of experience in the licensing world and the valuation of intellectual property and the hundreds of transactions that [he's] ultimately done,'" on the price to which he believed two parties to a license would have agreed. 2014 WL 1494247, at *4. The *GPNE Corp.* court found that the expert's "analysis is an impermissible black box without "sound economic and factual predicates." *Id.* (citation omitted). According to the court, "'30 years of experience' cannot be tested or 'subjected to peer review and publication,' nor is there a 'known or potential rate of error.'" *Id.* (*quoting* Daubert, 509 U.S. at 593–94). Further, "[w]hile the Court does not doubt that [the expert] is an experienced professional, [his] '30 years of experience' does not constitute 'sufficient facts or data,' or 'reliable principles and methods.'" *Id.* (quoting FED. R. EVID. 702).

Kursh's "methodology" is no different than the expert whose opinions were excluded in *GPNE Corp.* Kursh also bases his opinions on "general reliance upon 'all the evidence in the record' and his '30 years of experience.'" *See* Ex. C, Kursh Dep. 14:21-15:21. Like the *GPNE Corp.* expert's "30 years of experience," Kursh's 30 years of experience also "cannot be tested" or "subjected to peer review" and "does not constitute 'sufficient facts or data' or 'reliable principles and methods.'" "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). The Court should not do so here. The Court should bar Kursh from testifying because he fails to follow any discernable methodology or provide any bases for his purported opinions.

Kursh has been excluded on these grounds before. *See* Ex. H, Order After Hearing On April 27, 2018, *Cisco Sys., Inc. v. Hewlett-Packard Co.*, No. 2015-1-CV-284707 (Cal. Super. Ct. Santa Clara County, May 3, 2018), at 14. There, like here, his "references to specific industry

customs and usage that inform his interpretation of the Letter Agreement are few and far between." *Id.* And his opinions there, like here, "d[id] not identify any industry custom or practice in this regard." *Id.* The Court should exclude Kursh here as well.

### C. Kursh Impermissibly Interprets The Parties' Contracts.

"[W]ith respect to contract interpretation, the law is clear that 'testimony cannot be used to provide legal meaning or interpret [a contract] as written.'" *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-CV-00751-GPC-AGS, 2019 WL 1369007, at *13 (S.D. Cal. Mar. 26, 2019) (citation omitted)). "The interpretation of a contract is an issue of law" and "[e]xpert testimony is not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). Because "'the interpretation of contract language is a question of law,'" "it is an issue 'upon which the opinion of an expert may not be given.'" *Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve*, LLC, No. 1:14-CV-001445-JLT, 2016 WL 3538250, at *6 (E.D. Cal. June 28, 2016) (citations omitted); *see also PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 291 Fed. App'x 40, 41 (9th Cir. 2008) ("The expert testimony proffered . . . went to the interpretation of the underlying settlement agreement, a contract, an ultimate question of law upon which the opinion of an expert may not be given." (citation omitted)).

Likely aware of the law barring expert opinions on the proper interpretation of contracts, Adobe seeks to position Kursh as an expert on "customs and practices in the software industry." But while an expert may "explain custom and practice to a jury" to "aid in the interpretation of an ambiguous term in the contract," Kursh is "precluded from testimony about the particular contracts and conduct at issue in this action." *Actuate Corp. v. Aon Corp.*, No. C 10-05750 WHA, 2012 WL 2285187, at *1, *4 (N.D. Cal. June 18, 2012) (barring Kursh "from testimony about the particular contracts and conduct at issue in this action"); *see also In re W. Asbestos Co.*, 416 B.R. 670, 704 (N.D. Cal. 2009), *aff'd sub nom. Renfrew v. Hartford Acc. & Indem. Co.*, 406 Fed. App'x 227 (9th Cir. 2010) ("Although an expert may testify to industry custom and usage with respect to particular contractual terms, it is not appropriate for the expert to opine on the ultimate contract interpretation issue."). Kursh does nothing but opine "about the particular contracts" at issue and the "ultimate contract interpretation issue." Indeed, Kursh has twice been

precluded from testifying for this very reason. *See Actuate*, 2012 WL 2285187, at \*4; Ex. H, Order After Hearing On Apr. 27, 2018, *Cisco Sys., Inc. v. Hewlett-Packard Co.*, No. 2015-1-CV-284707 (Cal. Super. Ct. Santa Clara County, May 3, 2018).

The Court should reject Adobe's attempt to use "customs and practices" as magic words to put Kursh's otherwise impermissible legal opinions before the jury. *See Turner Const. Co. v. Nat'l Am. Ins. Co.*, No. C-03-1227 SBA, 2004 WL 6066675, at \*7 (N.D. Cal. Sept. 20, 2004). In *Turner Const. Co.*, an expert sought to opine on the "coverage afforded" by a surety bond. *Id.* The expert's "report recite[d] pertinent facts and conclude[d]" as follows:

> Based upon the aforementioned facts and *the standards typical in the industry*, when a surety's principal is defaulted and terminated a surety would be found to be obligated under a performance bond to remedy the default . . . . Under these circumstances, *pursuant to industry standards*, a surety would be found to be obligated under its bond to pay the difference between the balance remaining in the subcontract as of the date of the principal's default and termination and the cost of completion of the subcontract on all work done pursuant to the bonded subcontract . . . .

*Id.* (emphasis added). The court excluded the testimony because "[o]bviously, this testimony consists merely of legal conclusions." *Id.* The expert argued he "is not offering his interpretation of the Performance Bond or Subcontract, but is presenting testimony as to *what is typically done by sureties faced with a certain set of facts*." *Id.* (emphasis added). The court found, however, that "[s]uch testimony is unnecessary. The Court will examine the facts presented at trial, construe the Subcontract and the Performance Bond and make a determination as to what [the surety]'s duties were *in this particular case*." *Id.* (emphasis in original).

Kursh's opinions are indistinguishable from the "obvious" legal conclusions barred by the court in *Turner Const. Co.* Kursh seeks to use industry "customs and practices" in the same way the expert in *Turner Const. Co.* invoked "industry standards," that is, to support his interpretation of written agreements and purportedly opine about "what is typically done" given "a certain set of facts." As the court found in *Turner Const. Co.*, such testimony is not only impermissible "legal conclusion," it is "unnecessary" and irrelevant to the determination of the meaning of the contracts "*in this particular case*," which is an issue of law for the Court.

Like the expert in *Turner Const. Co.*, Kursh tries to use industry "customs and practices" as a smokescreen for otherwise improper testimony. He invokes "customs and practices" to set forth his own rules for interpreting contracts. For example, Kursh opines:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Ex. A, Kursh Report ¶ 82 (emphasis added). But this is just a misstatement of CAL. CIV. CODE § 1636, which provides that "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." That is not a "custom and practice of the software industry"—it is a statute, a general principle of contract interpretation, and not proper expert opinion. In his report, Kursh repeatedly offers his own principles of contract interpretation under the guise of explaining "customs and practices." *See id.* at ¶¶ 82-88.

Kursh also repeatedly invokes "customs and practices" to give meaning to the terms of the parties' agreements. For example, he opines, "████████████████████████
████████████████████████████████████████████████████
████████████████████████████." Kursh Report ¶ 202 (emphasis added). This opinion, however, says nothing about industry customs and practices. Tellingly, Kursh provides no explanation of any industry custom or practice that he is referencing, and no citation to any source to support its alleged existence. This opinion is just an interpretation of "████████████"—he is telling the Court and jury to ████████████████████
████████████████████████████. That is a legal conclusion and impermissible. Kursh's report is rife with similarly infirm opinions, which should all be excluded. Ex. A, Kursh Report ¶¶ 97-99, 101, 114, 126-214; Ex. B, Kursh Rebuttal ¶¶ 67-98.

**D.    Certain Opinions Of Kursh Also Lack Foundation.**

The Court should also exclude Kursh's rebuttal opinion that ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

█████████████████████████. *See* Ex. B, Kursh Rebuttal ¶¶ 34-40. It is undisputed that ████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████.[2]

Kursh opines that ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████ Ex. B, Kursh Rebuttal ¶¶ 34-40; *see also* Ex. A, Kursh

Report ¶ 184. But Kursh admits that he has no foundation for this opinion; he admits that he

"██████████████████████████████" of Adobe's service and products and that, in

fact, he "██████████████████." Ex. C, Kursh Dep. 227:21-231:13.

 Indeed, Kursh's unsupported opinion highlights Kursh's improper methodology and his

improper reliance on "customs and practice" as a passcode to admissibility. Despite admitting

that he never looked—and was never even asked to look—at Adobe's code to understand how it

worked, Kursh nevertheless believes he can offer an opinion on how it worked because he has

"████████████████████████████████" and he "███████████████████████████":

███ ████████████████████

███ █████████████████████████████

████████████████████████████████████████

██████████████████████████████████

*Id.* at 230:23-231:3. Kursh is wrong. Kursh's purported experience and the words "customs and

practices" do not mean that he knows what he admits he does not know. *See, e.g., GPNE Corp.,*

---

[2] The express terms of the 2013 CC Pricing Letter requires ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ *See* Ex. A, Kursh Report ¶ 120.

2014 WL 1494247, at *5 ("'30 years of experience' alone does not constitute a sufficiently reliable and testable methodology to prevent exclusion under *Daubert*.")  Kursh's rebuttal opinion ████████████████████████████████████████████████████████████ ████████████████████████ lack foundation and should be excluded.

## II.   Schuyler Quackenbush's Opinion 2 And Opinion 4 Should Be Excluded.

### A.   Quackenbush Opines On The Copyrightability Of Dolby's Technologies.

Quackenbush purports to be an expert on "audio compression software."  Quackenbush, however, does not limit himself to opinions about the technical and engineering aspects of Dolby's audio compression software.  Quackenbush, like Kursh, also seeks to offer legal opinions.  As relevant here, Opinion 2 (Ex. D, ¶¶ 157-174) and Opinion 4 (*id.* at ¶¶ 218-224) in Quackenbush's report opine on the copyrightability of ███████████████████████ ███████████████████████████████████████ (what Quackenbush calls, the "'Dolby Digital' Asserted Dolby Works," and "'Dolby Digital Plus' Asserted Works").

Quackenbush opines that "█████████████████████████████████████████ ████████████████████████████████████████."  Quackenbush similarly opines that "██████████████████████████████████████████████████████ ████████████████████████"  For both the "Dolby Digital" Asserted Works and the "Dolby Digital Plus" Asserted Works, Quackenbush opines that █████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████  *Id.* at ¶¶ 157, 162, 164, 165, 168, 171, 218, 223, 224.  According to Quackenbush, █████████████████████████████████████████████████████ ███████████████████████████████████████████  *Id.* at ¶¶ 157, 162, 164, 165, 168, 171, 218, 223, 224.  These are legal opinions.

### B.   Quackenbush's Legal Opinions On Copyrightability Are Inadmissible.

"Whether a particular portion of program code is copyrightable 'expression' or an uncopyrightable 'idea' represents a legal conclusion."  *Atari Games Corp. v. Nintendo of Am., Inc.*, No. C 88-4805 FMS, 1993 WL 214886, at *23 (N.D. Cal. Apr. 15, 1993).  Thus, an opinion

12

that a work is or is not protected by copyright is a legal conclusion for the court and not a proper subject of expert testimony. *See Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 99-07654 HLH (VBKX), 2003 WL 25781901, at *1 (C.D. Cal. Feb. 10, 2003) (finding expert's "opinion that factual material is not protected [by copyright] . . . is for the court and may not be stated by [the expert] to the jury, no matter how capable he is of expressing it to the court . . . ."). Yet this is exactly what Quackenbush seeks to testify about through his "Opinion 2" and "Opinion 4." *See* Ex. D, Quackenbush Report ¶¶ 157-174, 218-224.

Quackenbush's opinions that ███████████████████████████████ ████████████████████████████████████████ are opinions as to their copyrightability. *See, e.g.*, *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("Whether a particular component of a program is protected by a copyright depends on whether it qualifies as an 'expression' of an idea, rather than the idea itself."). And such legal conclusions "may not be stated by" Quackenbush. *Ticketmaster Corp.*, 2003 WL 25781901, at *1; *see also Stardock Sys., Inc. v. Reiche*, No. C 17-07025 SBA, 2018 WL 7348858, at *6, n.6 (N.D. Cal. Dec. 27, 2018) (dicta) ("opinion as to whether the work in question is 'copyrightable' constitutes an improper legal conclusion. Such legal conclusions are without evidentiary value."); *Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 8:14-CV-49, 2018 WL 3826684, at *4 (D. Neb. Aug. 10, 2018) (excluding opinion that true statements "weren't [copyrightable] because 'facts are not copyrightable'" on the ground that it is "a legal conclusion," even if "[i]t may be an accurate conclusion").

### C.   Quackenbush's Opinions Are Based On Erroneous Legal Conclusions.

Quackenbush's Opinion 2 and Opinion 4 not only constitute impermissible legal opinions, they are also premised on erroneous legal conclusions. This is an additional and independent ground for excluding Quackenbush's opinions from trial. Expert opinions based on erroneous legal conclusions are inadmissible. *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012). In *In re Novatel Wireless Sec. Litig.*, the Southern District of California "exclude[d] the testimony of Defendants' Loss Causation Expert" because his "analysis is based on a loss causation standard that is incompatible with that set forth by the

Ninth Circuit." 846 F. Supp. 2d at 1108. The court "f[ound] the Defendants' contention that this is a question of weight, not admissibility, unpersuasive." *Id.*

Here, Quackenbush's Opinion 2 and Opinion 4 that ██████████████████████ ████████████████████████████████████████████████████████ ████████████████ are premised on the assumption that object code is not generally protected by copyright and on the "advice" Quackenbush was given by Adobe's counsel regarding copyright issues, such as the advice that "███████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████" are copyrightable. Ex. D, Quackenbush Report ¶ 95.

That assumption and advice, however, are both wrong. It is well-settled in the Ninth Circuit that computer programs are copyrightable in both source code *and object code* forms— and that the copyright on the source code protects the code when compiled into object code form as well. *See, e.g.*, *Johnson Controls, Inc.*, 886 F.2d at 1175 ("Source and object code . . . are consistently held protected by a copyright on the program."); *see also Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1520 (9th Cir. 1992) ("The statutory language, read together with the CONTU report, leads inexorably to the conclusion that the copyright in a computer program extends to the object code version of the program."). In his deposition, Quackenbush stated that "████████████████████████████████████████████████████████." Ex. E, Quackenbush Dep. 128:20-129:1. There is no basis in copyright law for this assertion, which underlies Quackenbush's analysis and opinions of the Asserted Dolby Works.

As Quackenbush acknowledged in his deposition, moreover, █████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ *Id.* at 96:16-97:7. That definition tracks closely the statutory definition of a copyright-eligible "computer program, *see* 17 U.S.C. § 101 (definition of "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result"). There is no basis for the advice provided to

14

Quackenbush by Adobe's counsel to the effect that ███████████████████████████ ████████████████████████, and the law is to the contrary. *E.g.*, *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983) ("If other programs can be written or created which perform the same function as an . . . operating system program, then that program is an expression of the idea and hence copyrightable.").

Because Quackenbush's opinions are based on a "standard that is incompatible with that set forth by the Ninth Circuit," they are inadmissible. *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d at 1108.

## III. The Court Should Exclude Certain Opinions of Christian Tregillis.

### A. Tregillis Offers Factual Narratives, Not Opinions.

Tregillis is Adobe's expert on issues related to Dolby's royalty examination, conducted by Connor Consulting, and is Adobe's damages expert for rebutting Dolby's affirmative damages and opining on Adobe's alleged counterclaim damages.[3]  As relevant to this motion, Tregillis purports in his rebuttal report to rebut the damages calculation of Dolby's expert, Paul Meyer.  Tregillis states that "█████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████" Ex. E, Tregillis Rebuttal ¶¶ 160-184.  At deposition, however, Tregillis clarified that he actually has *no* opinion on ████████████████████████ ███████████████████.  *See* Ex. F, Tregillis Dep. 60:8-63:20.  Instead, Tregillis "████ ██████████████████████████████████████████████████████████" *Id.* at 61:25-62:1.

### B. Tregillis's Factual Narratives Will Not Assist The Trier Of Fact.

Expert testimony that "simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge . . . is inadmissible." *Fujifilm Corp. v. Motorola Mobility*

---

[3]  The parties reached a stipulation that neither side would file a Daubert motion on audit-related opinions, while reserving the right to raise issues related to the stipulation in pretrial filings, including via motions in limine, to obtain rulings or guidance from the Court on the appropriate limits of specific expert testimony to be offered at trial.  The relief concerning Tregillis that Dolby seeks here applies only to his damages-related opinions.

*LLC*, No. 12–cv–03587–WHO, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005)). "[E]xperts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE, 2016 WL 160462, at *2 (N.D. Cal. Apr. 26, 2016) (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)); *see also Fujifilm Corp.*, 2015 WL 757575, at * 27 (excluding expert testimony because proponent "has not demonstrated that [expert's] testimony . . . will provide more than 'simple inferences drawn from uncomplicated facts,' and a factual narrative which 'a lay juror is equally capable of constructing'" (citations omitted)); *Johns v. Bayer Corp.*, No. 09 CV 1935 AJB DHB, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (excluding testimony where "apart from his short conclusion and summary opinion, 11 ½ pages of [expert]'s 12 page report is nothing more than a synopsis of [defendant]'s marketing . . . during and before the Class Period, quoting extensively from both third-party market research reports and [defendant]'s own internal documents" and "offers nothing more than a factual narrative of these documents").

In *Fujifilm Corp.*, an alleged patent infringer alleged that a third-party, not plaintiff patentholder, had invented the subject matter of the patent at issue. The patentholder moved to strike the paragraphs in the infringer's expert report concerning the collaboration between the third-party and patentholder from which the patent arose. The court granted the motion because the expert "will not assist the trier of fact to understand or determine a fact in issue." *Id.* (citations omitted). According to the court, the paragraphs at issue "are replete with observations and inferences that jurors are perfectly capable of making for themselves without assistance of [the expert]'s technical expertise." *Id.* The court held that "[w]here expert testimony 'simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge, such evidence—taken on its own—is inadmissible.'" *Id.* (citation omitted). The court excluded the testimony because "the infringer has not demonstrated that [the expert]'s testimony on this subject will provide more than 'simple inferences drawn from uncomplicated facts,' and a factual narrative which 'a lay juror is equally capable of constructing.'" *Id.* (citations omitted).

Based on the foregoing, Tregillis should be excluded from opining on ████████████ ████████████████████████████████████████████████. Ex. F, Tregillis Rebuttal ¶¶ 160-185. He has *no* opinion on the matter. *See* Ex. G, Tregillis Dep. 60:20-62:1. Tregillis "████████████████████████████████████████████████████ ██████████" *Id.* at 61:25-62:1. This will be of no assistance to the Court or jury; Tregillis brings no expertise to bear on the matter. Tregillis testified that ████████████████ ████████████████████████████. *Id.* at 62:2-4, 63:10-20. Yet, critically, Tregillis has *no* opinion on which language should control:

*Id.* at 60:20-62:1. Tregillis's "opinion" is merely ████████████████████████ ████████████████████████████. Tregillis is just arguing the evidence, as in a

closing statement, and making inferences that could be drawn by any lay juror. This is the role of counsel and the jury at trial, not an expert. Such testimony will not assist the trier of fact. *See Fujifilm Corp.*, 2015 WL 757575, at *27 (excluding testimony where proponent "has not demonstrated that [expert's] testimony . . . will provide more than 'simple inferences drawn from uncomplicated facts,' and a factual narrative which 'a lay juror is equally capable of constructing'"); *Pac. Gas & Elec. Co.*, 2016 WL 1640462, at *2 ("[E]xperts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence."). As a result, Section 3.2 (Ex. F at ¶¶ 160-185) should be stricken from Tregillis' rebuttal report and he should be excluded from offering the opinions contained therein at trial.

### C.    Tregillis's Rebuttal Report Also Offers Impermissible Legal Opinions.

"Expert testimony is not proper for issues of law." *Crow Tribe of Indians*, 87 F.3d at 1045. As explained above in connection with the testimony of Kursh and Quackenbush, this means that whether "material is not protected [by copyright] . . . is for the court and may not be stated by [the expert] to the jury" (*Ticketmaster Corp.*, 2003 WL 25781901, at *1), and "'testimony cannot be used to provide legal meaning or interpret [a contract] as written.'" (*Bona Fide Conglomerate, Inc.*, 2019 WL 1369007, at *13 (citation omitted)). Tregillis's rebuttal report contains opinions that violate both of these prohibitions.

Section 3.1.4 (Ex. F at ¶ 156) and Section 3.5 (*id.* at ¶¶ 203-207) of Tregillis's rebuttal report seek to opine about ████████. Section 3.1.4 merely reiterates Quackenbush's inadmissible legal conclusion that ████████████████████████████████████████ ████████████████████████████████ Tregillis admits ████████████████ ████████████████████████████ Ex. F, Tregillis Dep. 102:1-15. As set forth above, Quackenbush's erroneous legal conclusion "may not be stated by" any expert, let alone Tregillis, who is "████████████████████████████████████████." (Ex. E, Tregillis Rebuttal ¶ 156). *Ticketmaster Corp.*, 2003 WL 25781901, at *1; *see also Johnson Controls, Inc.*, 886 F.2d at 1175. Section 3.5 is similarly impermissible. Tregillis opines that a "████████████████████████████████████████████

███████████████████ Ex. E, Tregillis Rebuttal ¶ 203.  Not only is this a legal opinion, it is erroneous.  *See, e.g.*, 17 U.S.C. § 106(3) (exclusive rights of copyright owner include right to reproduce, prepare derivative works based upon, and distribute the copyrighted work); 17 U.S.C. § 501 (anyone who violates exclusive rights is infringement).

Section 3.6.5 (Ex. F at ¶¶ 228-231) in Tregillis's rebuttal report, which opines that "██████████████████████████████████████████████████████ ████████████████████" plainly seeks to give meaning to the terms of a contract.  Ex. E, Tregillis Rebuttal § 3.6.5 (emphasis added).  This opinion is no different than Kursh's opinion that ████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████ (*id.* at ¶¶ 67-98), and equally impermissible.  S*ee, e.g.*, *PMI Mortg. Ins. Co.*, 291 Fed. App'x at 41 ("The expert testimony proffered . . . went to the interpretation of . . . a contract, an ultimate question of law upon which the opinion of an expert may not be given.").  Indeed, Tregillis does not even purport to have any expertise in "customs and practices" to use as cover.  The Court should strike Section 3.1.4 (Ex. F at ¶ 156), Section 3.5 (¶¶ 203-207), and Section 3.6.5 (¶¶ 228-231) of his rebuttal report, and exclude him from offering such testimony at trial.

## CONCLUSION

For the foregoing reasons, Dolby respectfully requests that the Court (1) exclude the testimony of Steven Kursh, in its entirety, or in the alternative, strike Paragraphs 97-99, 101, 114, and 126-214 of the Expert Report of Steven Kursh, and Paragraphs 34-40, and 67-98 of the Expert Rebuttal Report of Steven Kursh, and exclude him from offering any testimony on or regarding the subjects covered by those paragraphs; (2) strike Paragraphs 157-174 (Opinion 2), and 218-224 (Opinion 4) of the Expert Report of Schuyler Quackenbush, and exclude him from offering any testimony on or regarding the subjects covered by those paragraphs; and (3) strike Paragraphs 156 (Section 3.1.4), 160-185 (Section 3.2), 203-207 (Section 3.5), and 228-231 (Section 3.6.5) of the Expert Rebuttal Report of Christian Tregillis, and exclude him from offering any testimony on or regarding the subjects covered by those paragraphs.

Dated:  August 13, 2019

Respectfully submitted,


KING & SPALDING LLP

By: /s/  *Charles C. Correll, Jr.*

Charles C. Correll, Jr.
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Bruce W. Baber (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Timothy T. Scott
George R. Morris
Samuel R. Diamant
KING & SPALDING LLP
601 South California Avenue, Suite 100
Palo Alto, California 94304
Telephone: (650) 422-6700
Facsimile: (650) 422-6800

Robert E. Meadows (admitted *pro hac vice*)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Plaintiffs Dolby Laboratories Licensing Corporation and Dolby International AB and Counterclaim-Defendant Dolby Laboratories, Inc*

DOLBY'S MOTION TO EXCLUDE/STRIKE EXPERT TESTIMONY OF ADOBE EXPERTS [REDACTED VERSION]

CASE NO.  4:18-cv-01553-YGR