UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOLBY LABORATORIES LICENSING
CORPORATION, et al.,

Plaintiffs,

v.

ADOBE INC.,

Defendant.

Case No. 18-cv-01553-YGR (DMR)

**ORDER ON DEFENDANT'S MOTION
TO MAINTAIN PRIVILEGE
DESIGNATIONS**

Re: Dkt. No. 135

Plaintiffs Dolby Laboratories Licensing Corporation and Dolby International AB ("Dolby")

challenges Defendant Adobe, Inc.'s ("Adobe") privilege designations for over 4,000 non-lawyer

communications. [Docket No. 109 at 3.] Dolby raised concerns about Adobe's privilege log. Those

concerns cast doubt on whether Adobe was properly asserting privilege with respect to non-lawyer

communications, and prompted the court to order Adobe to lodge a sample of fifteen documents[1]

selected by Dolby from Adobe's log for *in camera* review. After conducting the review, the court

ordered the parties to brief the privilege issues for the sample documents. On July 5, 2019, Adobe

filed this motion to retain the privilege designations. [Docket Nos. 135 ("Mot."), 143 ("Reply").]

Dolby filed a timely opposition. [Docket No. 141 ("Opp.").] The court held a hearing on August

8, 2019. For the reasons stated below, the court grants in part and denies in part Adobe's motion to

retain privilege designations.

//

---

[1] When Adobe submitted the sample of fifteen documents for *in camera* review, Adobe conceded
that two of the fifteen documents should not have been listed on the privilege log. As a result of
Adobe's logging errors, the sample size shrank from fifteen to thirteen documents.

## I.    BACKGROUND

On March 12, 2018, Dolby filed this action for copyright infringement and breach of contract against Adobe and filed an amended complaint on May 18, 2018.  [Docket Nos. 1, 20 ("FAC").] The court draws the following case description from the allegations in the FAC.  Dolby develops audio and audio-visual technologies.  *Id.* ¶ 15.  Generally, Dolby does not develop products for direct sale to end-users, but instead licenses its products to other companies that incorporate them into their products.  *Id.* ¶ 1.  Dolby's licensing agreements usually allow its licensees to self-report their sales of products containing Dolby technology, although Dolby retains broad rights under those agreements to conduct third-party audits.  *Id.* ¶ 2.

Between 2002 and 2017, Adobe licensed Dolby products for use in its audio-video content creation and editing software.  FAC ¶¶ 4, 16-17.  Adobe entered into license agreements with Dolby in 2003, 2012, and 2013 ("Agreements"), each of which defined the scope of the license.  *Id.* ¶ 23. Adobe was obligated by the Agreements to report its sales of products containing Dolby technology to Dolby, pay the agreed-upon royalties for the sales, and refrain from selling products containing Dolby technology outside the scope of the licenses.  *Id.*  The Agreements also provided Dolby the right to inspect and audit Adobe's books and records so that Dolby could verify the accuracy of Adobe's reporting of sales and its payment of royalties.  *Id.*

On January 5, 2015, Dolby attempted to begin the auditing process to inspect Adobe's books and records for the period 2012-2014.  FAC ¶ 86.  Dolby alleges that "for over three years Adobe employed various tactics to frustrate Dolby's right to audit Adobe's inclusion of Dolby Technologies in Adobe's products."  *Id.* ¶ 89.  Dolby claims that Adobe only offered to provide data that it unilaterally determined to be relevant to its obligations under the Agreements and only for a limited time period.  *Id.* ¶ 90.  Dolby avers that it has still not received the information required to complete an audit of Adobe's records.  *Id.* ¶ 92.  On September 8, 2017, Dolby notified Adobe that it was also going to initiate the audit process for the inspection period 2015-2017.  *Id.* ¶¶ 94-95. Adobe again allegedly "failed to provide Dolby with complete auditable information."  *Id.* ¶ 95.

Dolby claims that Adobe breached its contracts and engaged in copyright infringement in numerous ways, including:

(1) bundling multiple licensed products together but only reporting one sale; (2) granting numerous licenses to Adobe products but only reporting a sale to Dolby if and when Adobe or its customer took some further action; (3) failing to report and pay royalties for multiple different product sales to a single customer; (4) misreporting Adobe's professional products under incorrect license agreements; (5) failing to report and pay royalties on upgrades to the Adobe products as agreed in the license agreements; (6) failing to report, or incorrectly reporting, the Dolby technology contained in Adobe products; and (7) selling products containing Dolby technology without any license at all.

FAC ¶ 6. Dolby alleges that Adobe's failure to abide by its audit obligations prevented Dolby from discovering "the nature and extent of Adobe's breaches or infringement." *Id.* ¶ 97. Dolby now asserts claims for copyright infringement and breach of contract.

On May 8, 2019, the parties exchanged privilege logs for communications that did not include lawyers but for which the parties claimed attorney-client privilege or work product protection. [Docket No. 135-1 ("Berta Decl.") ¶ 3.] Adobe included 4,690 communications on its privilege log for non-lawyer communications. *Id.* On May 17, 2019, the parties filed a joint discovery letter in which Dolby challenged Adobe's privilege designations on those documents. [Docket No. 109 at 3.] The court ordered Adobe to review its log of non-attorney communications, to "modify the log as necessary to remove inappropriate assertions of attorney-client privilege," and to provide Dolby with the amended log. [Docket No. 114.] The court directed Dolby to select fifteen sample documents from the log, which Adobe was then to lodge for *in camera* review. *Id.* Adobe admitted that it had mistakenly claimed privilege over two of the fifteen documents. The court then directed the parties to fully brief the dispute on the remaining thirteen documents. [Docket No. 125.]

The purpose of this order is to adjudicate the disputes regarding these thirteen documents, as well as provide guidance to the parties so that they can attempt to resolve the remaining disputes regarding Adobe's privilege log without further court intervention. As was discussed in detail in the August 8, 2019 hearing, the court will appoint a special master at the parties' expense to determine any issues of privilege over the remaining documents. *Id.*

//

## II.    LEGAL STANDARDS

### A.    Attorney-Client Privilege

Federal privilege law applies in this federal copyright infringement case with pendent state law claims. *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005); *see also* Fed. R. Evid. 501, Advisory Committee Notes ("In nondiversity jurisdiction civil cases, federal privilege law will generally apply."). The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *see Vasudevan Software, Inc. v. IBM Corp.*, No. 09-cv-5897-RS (PSG), 2011 WL 1599646, at * 1 (N.D. Cal. Apr. 27, 2011). The privilege attaches when (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived. *Richey*, 632 F.3d at 566 (brackets, citation, and quotation marks omitted).

Attorney-client privilege is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies. *Vasudevan Software, Inc.*, 2011 WL 1599646, at *1 (footnotes and quotation marks omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that party asserting privilege "must make a prima facie showing" that privilege applies) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see Richey*, 632 F.3d at 566. The privilege protects only communications, and not underlying facts. *Upjohn v. United States*, 449 U.S. 383, 396 (1981) (finding that a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney") (citations omitted).

### B.    Work Product Doctrine

The work product doctrine protects from discovery "materials prepared by an attorney in anticipation of litigation," be they "by or for the attorney." *United States v. Bergonzi*, 216 F.R.D. 487, 494 (2003) (citations omitted); *accord United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). It aims to balance the "promotion of an attorney's preparation in representing a client" and "society's general interest in revealing all true and material facts to the resolution of a dispute." *In*

*re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citation and quotation marks omitted). To qualify for work-product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Richey*, 632 F.3d at 567 (citation and quotation marks omitted). When a document was not prepared exclusively for litigation, it will receive protection if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id*. at 568 (citation and quotation marks omitted). This analysis requires the court to examine the totality of the circumstances and determine whether the document was prepared in anticipation of litigation and "would not have been created in substantially similar form but for the prospect of litigation." *Id*. (citation and quotation marks omitted).

Unlike the attorney-client privilege, the work product doctrine may be overcome by a party's showing of "need and undue hardship." *In re Seagate Tech*., LLC, 497 F.3d at 1375 (citing Fed. R. Civ. P. 26(b)(3)). The degree of showing required, however, depends on whether the sought-after material "is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not." *Id*. (citations omitted). Factual materials simply require a demonstration of "substantial need and undue hardship," while materials reflecting mental processes receive greater, "nearly absolute" protection. *Id*. (citations omitted).

## III. DISCUSSION

### A. Adobe's Challenge to *In Camera* Review

As a threshold matter, Adobe asserts that Dolby was not entitled to *in camera* review because its sole basis for challenging Adobe's privilege designations was "an unfounded suspicion rooted in the total number of entries on Adobe's log." Mot. at 2. Dolby counters that its challenge was not based solely on the sheer number of entries on Adobe's log but arose because "very few of the entries contain sufficient information to state a claim for privilege." Opp. at 9.

*In re Grand Jury Investigation* established the standard that a party must meet in order to seek *in camera* review of contested assertions of privilege. 974 F.2d at 1074. The Ninth Circuit acknowledged that "[a]lthough *in camera* review of documents does not destroy the attorney-client

privilege, it is an intrusion which must be justified." *Id.* at 1074. The court explicitly clarified that the challenging party need not make a *prima facie* showing that the privilege does not apply, and described the standard as a "minimal threshold." *Id.* at 1074. It concluded that a party opposing a claim of attorney-client privilege "need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075. Once the challenging party makes that initial showing, "the decision whether to conduct the review rests within the discretion of the district court."[2] *Id.*

Here, Dolby more than met the minimal threshold. In the joint discovery letter where Dolby first raised its challenge, Dolby explained the basis for the challenge and offered examples of log descriptions that appeared inadequate. *See* Docket No. 109 at 3. Specifically, in addition to the fact that Adobe had listed 4,690[3] documents on its privilege log for non-attorney communications,[4] Dolby noted that numerous subject lines on logged emails appeared to reference business-related communications rather than the transmission of legal advice. *Id.* It also argued that the generic description "email reflecting legal advice regarding the scope of the audit" was insufficient to allow Dolby to analyze Adobe's claim of privilege over that document. *Id.* The parties also submitted a copy of Adobe's privilege log; upon review of the entries, the court determined that there was

---

[2] Adobe also relies on *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343 (9th Cir. 2014) ("*Rock River*") and *Ritchie v. Sempra Energy*, No. 10-cv-1513-CAB (KSC), 2015 WL 12912030 (S.D. Cal. June 11, 2015). *Rock River* acknowledged that *in camera* review of documents for which claims of privilege are contested cannot be justified by mere "unfounded suspicion." 745 F.3d at 343. However, that decision did not provide any details about the documents at issue or the basis for challenging the privilege designations, and so is not instructive to the present case. *Ritchie*, as Dolby points out, is a diversity case that applied California privilege law, which provides "a liberal view of the [attorney-client] privilege that conflicts with the strict view applied under federal common law." *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009); *see Ritchie*, 2015 WL 12912030, at *3 ("In diversity cases, the Court must decide privilege issues in accordance with state law."). Accordingly, the analysis in *Ritchie* is inapplicable here, where federal privilege law applies.

[3] Dolby's letter says 4,960 documents, but this appears to be a transposition error.

[4] Adobe has repeatedly removed improperly logged documents. The initial log listed 4,690 documents. Adobe revised it more than once, and by the time of the parties' briefing, Adobe had reduced the number to 2,854 log entries. [Docket No. 143-1 ("Callagy Decl.") ¶ 8.] The repeated reductions presented a moving target and lend further support to the concern that Adobe over-designated documents as privileged.

adequate basis to support a limited *in camera* review to enlighten the court about the issues underlying the discovery dispute. Adobe was ordered to "immediately review its log of non-attorney communications and modify the log as necessary to remove inappropriate assertions of attorney-client privilege." [Docket No. 114 at 2.] The court further ordered Dolby to identify fifteen sample documents on the amended log, which Adobe was then to lodge with the court for *in camera* review. *Id.* Upon review of both Adobe's amended privilege log and the sample documents, the court determined that full briefing on the issue was justified. [Docket No. 125.][5]

## B. Dolby's Challenge to Adobe's Reply Evidence

In its opening brief, Adobe submitted declarations from three Adobe employees who were participants in some of the contested communications, including: Michael Draper, Adobe's Manager of Privacy Investigations (Docket No. 135-2 ("Draper Decl.")); Joe Perry, Adobe's Director of Worldwide Royalty Operations and Data Management (Docket No. 135-3 ("Perry Decl.")); and Colin Stefani, Adobe's Principal Product Manager-Cloud Platform (Docket No. 135-4 ("Stefani Decl.")).

Dolby argued in its opposition that Adobe's evidence was insufficient to meet its burden to show privilege because Adobe did not submit any declarations from Adobe's in-house counsel. In response, as part of its reply, Adobe submitted five more declarations, three of which are from former or current Adobe in-house lawyers who purportedly directed the investigation(s) that produced the disputed documents: Hung Chang (Docket No. 143-5 ("Chang Decl.")); Donna Kolnes (Docket No. 143-6 ("Kolnes Decl.")); and Maulik Shah (Docket No. 143-8 ("Shah Decl.")). Adobe also submitted supplemental declarations from Perry and Stefani. [Docket Nos. 143-7 ("Perry Supp. Decl."), 143-9 ("Shah Supp. Decl.").] Dolby objects to the reply evidence, arguing that Adobe failed to submit attorney declarations attesting to the privileged nature of the documents in its opening motion, and that it is prejudicial to submit them on reply.

Adobe's actions are troubling. The court directed Adobe to file supporting declarations as

---

[5] Adobe also argues that its documents should not be subject to *in camera* review unless Dolby's corresponding privilege log entries are subject to the same. This is specious. Adobe never challenged Dolby's privilege designations before the discovery cut-off date; the sufficiency of Dolby's log entries is therefore not before the court.

part of its motion to retain privilege designations.  [Docket No. 125.]  A cursory review of the case law demonstrates that attorney declarations generally are necessary to support the designating party's position in a dispute about attorney-client privilege.  *See, e.g.*, *Datel Holdings Ltd. v. Microsoft Corp.*, No. 09-cv-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) (holding that attorney-client privilege did not protect communications between employees where there was "no showing that the results of the investigation were ever conveyed to counsel"); *Oracle Am., Inc. v. Google, Inc.*, No. 10-cv-03561-WHA (DMR), 2011 WL 3794892, at *3 (N.D. Cal. Aug. 26, 2011) (finding an attorney's affidavit insufficient to establish privilege where the attorney did not testify that the document was "connected to the work he requested . . . as part of the provision of legal advice he describes in his declaration.").

Adobe should have filed the attorney declarations with its opening brief rather than on reply and is admonished for failing to follow the court's specific directions to submit all supporting evidence with its motion.  In the interest of reaching the merits, the court will consider Adobe's reply declarations.  However, the special master is directed to find waiver if Adobe fails to provide affirmative and adequate support for its assertions of privilege in any future dispute.

## C.       Privilege for Communications Between Non-Attorney Employees

The thirteen documents in dispute are communications between non-attorney employees of Adobe.  The attorney-client privilege "may attach to communications between nonlegal employees where: (1) the employees discuss or transmit legal advice given by counsel; and (2) an employee discusses her intent to seek legal advice about a particular issue."  *Datel*, 2011 WL 866993, at *5 (quoting *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002)) (internal quotation marks omitted); *see also AT&T Corp. v. Microsoft Corp.*, No. 02-cv-0164 MHP (JL), 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications between non-lawyer employees about matters which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege.").  "A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-cv-20905-RMW, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008).

Adobe asserts that the documents were generated at the direction of Adobe's in-house counsel or communicated to Adobe's legal department "so that Adobe's lawyers could form and express legal opinions about the Dolby contractual relationship." Reply at 1. It cites *ChevronTexaco Corp.* for the proposition that attorney-client privilege protects "communication[s] between nonlegal employees in which the employees discuss or transmit legal advice given by counsel." 241 F. Supp. 2d at 1077. It further held that "internal communications that reflect matters about which the client intends to seek legal advice are protected." *Id.* at 1077. However, *ChevronTexaco* also recognized the unique role played by in-house counsel, who "may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities." *Id.* at 1076. Communications with in-house counsel may relate to business rather than legal matters, and in-house counsel's business advice is not protected by attorney-client privilege. *Id.* Therefore, unlike communications with outside counsel, which are presumed to be made for the purpose of seeking legal advice, there is no presumption that communications with in-house counsel are protected by attorney-client privilege. *Id.*

Adobe also cites *AT&T*, a patent case in which a defendant corporation's employees exchanged emails about the plaintiff's patents and drafted a technical memorandum comparing the plaintiff's technology with the allegedly infringing technology. 2003 WL 21212614, at *1, *3. The investigation into the plaintiff's patents was directed by non-attorney executives and these documents were later forwarded to the defendant's in-house counsel. *Id.* at *1, *3. The court determined that the email exchanges contained analysis and discussions of the plaintiff's patents, which were matters upon which the defendant intended to seek legal advice. *Id.* at *3 ("[The emails] were not produced merely for business purposes."). The court held that the documents were privileged, since "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege." *Id.* (citing *Upjohn*, 449 U.S. at 394-95). The court determined that privilege attaches to communications between non-legal employees "[a]s long as the legal implications were understood at the beginning of the inquiry and the communications were covered by a veil of confidentiality." *Id.* at *3. The court similarly found that the technical memorandum and attached

explanatory document were privileged, since they were created after a meeting with corporate counsel and likely "prepared at the behest of corporate counsel." *Id.* at *3.

Dolby, on the other hand, relies on *Datel*, which involved a dispute about the production of an email chain between non-lawyer employees. 2011 WL 866993, at *1. The plaintiff company filed an antitrust lawsuit, and the defendant asserted counterclaims for trademark infringement. *Id.* at *7. The defendant company's attorney made an oral request to an employee to investigate whether the opposing party had infringed the company's intellectual property rights and to "enlist other employees with relevant technical expertise." *Id.* at *1, *6. The employee who received the request then started an email chain with other non-attorney employees. *Id.* at *5-6. That employee later testified that the purpose of the investigation was to understand how the plaintiff's alleged infringing technology worked. *Id.* at *2. The court determined that the original email was privileged because it transmitted legal advice from the attorney, but the remaining emails on the chain were not privileged because they only contained discussions about the technical aspects of testing the allegedly infringing product. *Id.* at *6. The court specifically noted that "[t]here are no communications with lawyers on the email chain, nor is there any further reference to legal advice about [the plaintiff]." *Id.* Additionally, there was "no showing that the results of the investigation were ever conveyed to counsel." *Id.* Accordingly, the court determined that the rest of the email chain did not relate to the transmission of legal advice. *Id.*

Dolby also cites *Oracle*, where the document in dispute was an email authored by a non-lawyer employee of Google, Inc., which was the defendant in the patent case. 2011 WL 3794892, at *1-2. The relevant documents included eight auto-saved drafts of the email in dispute, as well as two final versions. *Id.* at *1. The first draft was addressed only to a non-lawyer executive of the company and discussed technical alternatives to using the plaintiff Oracle's Java technology, with the conclusion that the company needed to negotiate for a license to use Java. *Id.* The final version of the draft was copied to in-house counsel and included the phrases "Attorney Work Product" and "Google Confidential." *Id.* Google argued that the email was a communication to a Google attorney "conveying the fruits of research that [the employee] performed at the direction of Google attorneys." *Id.* at *3 (internal quotation marks omitted). Google asserted that the email was drafted

10

after a presentation by Oracle where the latter threatened to sue Google for patent infringement, and Google in-house counsel directed several employees, including the author of the email, to "gather certain information related to Oracle's infringement claims." *Id.* The email at issue was purportedly part of that effort. *Id.* The court found that the email was not privileged because "the contents of the email itself severely undermine the claim that [the employee] generated this particular email as part of an attorney-directed effort to provide legal advice or prepare for litigation." *Id.* The court noted that the in-house counsel who received the email did not testify that it was "connected to the work he requested . . . as part of the provision of legal advice he describes in his declaration." *Id.*; *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341-YGR (JSC), 2013 WL 5594474, at *1 (N.D. Cal. Oct. 10, 2013) (finding that a document purportedly created at the direction of a company's general counsel was not privileged because "there is no evidence that [the party's] counsel ever received or reviewed the reports"). The court determined that the email was created at the direction of the company executives rather than in-house counsel, and Google failed to explain how those executives were "involved in the described efforts to formulate legal advice." *Id.* at *3-4. The court also pointed out that the email text did not mention anything about "legal advice, lawyers, litigation, Oracle, or patent infringement," and focused instead on "technical aspects of [Google's technology] and the need to negotiate a license for Java." *Id.* at *4. The court accordingly held that the email was a business discussion and not the "proffering of research for an attorney preparing legal advice." *Id.*

Having reviewed the relevant authorities, the court now analyzes the individual documents in dispute.

### 1. Log Entries No. 44 and 45

Adobe asserts that Log Entries No. 44 and 45 are protected by both attorney-client privilege and work product. *See* Mot. at 7. However, the privilege log reveals that Adobe did not assert attorney-client privilege over Log Entry No. 44. For this reason, Adobe has waived the assertion of attorney-client privilege with respect to Log Entry No. 44.

#### a. Attorney-Client Privilege

Log Entry No. 44 is an email exchange between Colin Stefani and Charles Van Winkle, an

11

Adobe Engineer, and Log Entry No. 45 is an attachment to that email. Adobe asserts that when this exchange occurred, Adobe had "recently received audit findings from Dolby's royalty audit of Adobe." Mot. at 7; *see* Stefani Decl. ¶ 3. Stefani claims that he sent the email to Van Winkle at the direction of attorney Shah, who had told him to "gather facts and prepare a spreadsheet that contained information necessary for [Shah] to provide legal advice in relation to the audit findings." *Id.* Shah testifies that these two documents "relate to instructions I gave Mr. Stefani to investigate the use of certain Dolby technology in various Adobe products, a legal issue arising out of the Dolby audit of Adobe, so that I could provide legal advice on the matter." Shah Decl. ¶ 3. Shah states that "[t]he sole purpose of Mr. Stefani's analysis was to assist myself and Adobe's legal department to provide legal advice about the assertions raised by Dolby's auditor" and that Stefani "subsequently presented the results of his investigation to me, and I in turn used this information solely to render legal advice." *Id.*

The court determines that Log Entry No. 45 is not protected by attorney-client privilege. As in *Datel*, where the contested documents relayed only factual information about a disputed technology, the attachment discusses technical aspects relating to the integration of Dolby technology into Adobe software. *See Datel*, 2011 WL 866993, at *6 (determining that privilege did not extend over communications between employees about technical facts). Adobe relies on *AT&T*, which reached a different conclusion and applied privilege to certain technical documents. However, *AT &T* is distinguishable, because the investigation at issue in that case involved a comparison between the plaintiff's patent and the defendant's allegedly infringing technology. *See* 2003 WL 21212614, at *3. The investigation thus called for a technical expert's opinion on the similarity between the technology, which incorporated analysis and opinion instead of merely recounting facts. The heart of the attorney-client privilege goes to protecting communications and not facts. *See Upjohn*, 449 U.S. at 365-66. As in *Datel*, the document at issue here relates solely to factual information about how Dolby technology was integrated into Adobe software. There is no indication that the employees engaged in an analysis for which they were seeking legal advice, which was the issue in *AT&T*. Accordingly, attorney-client privilege does not protect the facts revealed in Log Entry No. 45.

12

### b.    Work Product

Adobe also asserts work product protection over both Log Entry No. 44 and 45.  It asserts that when this email and attachment were exchanged, Adobe had "recently received audit findings from Dolby's royalty audit of Adobe."  Mot. at 7; *see also* Stefani Decl. ¶ 3.  Adobe claims that at that time, it had a "reasonable belief that there was a prospect of litigation with Dolby because of the audit dispute, and the severity of the demands that Dolby made to Adobe."  Mot. at 8.  Attorney Shah testified that Dolby's auditor had asserted a material underpayment at that time, and he "anticipated that the matter would proceed to litigation, and the chart drafted by Mr. Stefani was necessary to my ability to assess and develop litigation strategy."  Shah Decl. ¶ 3.  Dolby counters that Adobe provided no evidence for its assertion of work product doctrine because Adobe submitted no evidence in its opening brief that the document was created in anticipation of litigation or that any lawyer was involved in the creation of the document.  Opp. at 17.

After considering the declarations that Adobe submitted on reply, the court finds that Adobe has met its burden to show that work product protection applies to these two documents.  The attachment displays information about Dolby products as they were integrated into Adobe software for the years 2012 through 2014, which is the time span covered by Dolby's initial audit.  *See* FAC ¶ 86 (stating that the first audit covered the inspection period of 2012 to 2014).  It contains indications that it was prepared in direct response to the primary inquiry of the audit.  Shah testified that Dolby's auditor had already "asserted a material underpayment" at that time, which led him to "anticipate[] that the matter would proceed to litigation."  Shah Decl. ¶ 3.  Given that the audit had been pending almost two years by the time the document was created, and Dolby's auditor had expressed doubts about the integrity of Adobe's reporting, it was reasonable to anticipate that Dolby would file this case.  Thus, the content of the documents as well as Adobe's supporting declarations establish that these documents "can be fairly said to have been prepared or obtained because of the prospect of litigation."  *Richey*, 632 F.3d at 568 (citation omitted).  Accordingly, the court finds that Log Entries Nos. 44 and 45 are protected by the work product doctrine.

The work product doctrine can be overcome by a showing of "substantial need."  Dolby has not had the opportunity to raise an argument regarding their need for these particular documents

because Adobe did not describe the documents in sufficient detail. Therefore, Adobe is ordered to provide a detailed description of the type of information contained in the documents so that Dolby can determine whether it can raise a "substantial need" argument. Adobe must provide the description within one week of the date of this order. The special master shall decide any remaining disputes on these two documents.

### 2. Log Entry No. 52

Adobe asserts attorney-client privilege over Log Entry No. 52, which is an email thread that begins with an email from Stefani to "a group of Adobe engineering and product team members." Stefani Decl. ¶ 4. Adobe asserts that the thread is protected because the employees were "discussing information related to Dolby technology in Adobe products for the purpose of presenting the information to Adobe's legal department so that the legal department could provide legal advice on a question that arose out of the audit." Mot. at 8. Stefani testifies that the "entire email thread is directly related to a factfinding request that Adobe in-house counsel Hung Chang instructed me to undertake." Stefani Decl. ¶ 4. Chang confirms that the chain "relates to instructions [he] gave to Mr. Stefani to investigate a legal issue arising out of Dolby's audit of Adobe. Chang Decl. ¶ 3.

Most of the chain appears to relay information relating to the integration of Dolby products into Adobe software. It does not convey any analysis or opinion and relates purely to underlying facts, which are not protected by attorney-client privilege. *See Upjohn*, 449 U.S. at 365-66. The chain is similar to the one at issue in *Datel*, where the emails between lawyers did not identify any transmission of legal advice. 2011 WL 866993, at *6. Other than a single reference to an audit in the initial email, the chain never mentions "legal advice, lawyers, [or] litigation." *Oracle*, 2011 WL 3794892, at *4. A single paragraph in Van Winkle's August 13, 2015 email contains Van Winkle's personal opinion about where lawyers should and should not look for certain factual information. This is not privileged because Van Winkle clearly indicates that his statement was initially made in a "private conversation" with a non-lawyer employee, which discounts the argument that it was made for the purpose of seeking legal advice. Accordingly, Log Entry No. 52 is not privileged.

Adobe must produce Log Entry No. 52 in its entirety.

//

14

### 3. Log Entry No. 62

Adobe asserts that attorney-client privilege protects the disclosure of Log Entry No. 62, which is an email exchange between several Adobe employees (Van Winkle, Pruth Shankarappa, and David McGavran) from July 31, 2015. It purportedly "discuss[es] an issue that [was] to be presented to Adobe in-house counsel for the purposes of obtaining legal advice." Mot. at 9. Stefani avers that "[t]his email is directly addressing a question that Adobe in-house counsel attorney Hung Chang instructed me to research on July 28, 2015." Stefani Decl. ¶ 5. Chang testifies that this document "relates to instructions I gave to Mr. Stefani to investigate a legal issue arising out of Dolby's audit of Adobe." Chang Decl. ¶ 3. Chang goes on to explain that he had been asked by Adobe's audit team to provide "legal guidance concerning the scope of the [parties'] contracts" in light of a question from Dolby's auditor whether certain Adobe offerings qualified for the pricing set forth in the contracts. *Id.* ¶ 3. The email exchange at issue contains mainly factual information relating to the integration of Dolby technology into Adobe products. The mere fact that the information relates in some way to Dolby's audit does not mean that the communication is privileged. For the reasons stated above, the facts relayed in this email exchange are not protected by attorney-client privilege.

With respect to information that is not purely factual, a July 31, 2015 email from McGavran asks "[c]an one of you answer this question regarding Dolby," followed by a question that appears to have been copied from an unspecified source. As Dolby points out, Stefani submitted the declaration in support of this email chain even though he was not part of the exchange. None of the employees who were copied on the chain, including McGavran, submitted a declaration attesting to the content of the email or the source of the question copied in the email. Neither Stefani nor Chang definitively state that they personally posed the question, or that the question ultimately originated from an attorney. Therefore, Adobe's evidence does not establish that the specific question was asked by an attorney for the purpose of providing legal advice.

In sum, McGavran's question-posing email is not privileged because Adobe has failed to show that it transmitted legal advice from an attorney or that it was formulated for the purpose of forming a legal opinion. The remaining portions of the chain are not privileged because they relate

facts that are not protected.  Accordingly, Adobe must produce this document in full.

### 4.    Log Entry No. 84

Log Entry No. 84 is a "meeting invitation for a proposed meeting on November 8, 2016 of Adobe employees who are part of Adobe's engineering and product teams."  Mot. at 9; *see* Stefani Decl. ¶ 6.  A subsequent email exchange discusses the integration of Dolby technology into Adobe products.  Adobe produced most of the exchange, redacting some portions based on attorney-client privilege.  Stefani testifies that "these redactions reflect the transmission of legal advice that came from Adobe in-house counsel Maulik Shah regarding legal interpretations of the license agreements between Adobe and Dolby."  Stefani Decl. ¶ 6.

The redacted portions of the exchange are protected by attorney-client privilege.  The first redaction in Stefani's email dated October 27, 2016 discusses legal interpretations of the license agreements between Adobe and Dolby and specifically references Shah.  Shah testifies that he provided this legal guidance.  Shah ¶ 4.  The redaction in Van Winkle's email dated October 27, 2016 relays Van Winkle's understanding of the legal aspects of the license with a reference to in-house counsel.  The redaction in the October 25, 2016 email also discusses a legal interpretation, which Shah testifies that he provided.  *Id.*  Adobe has submitted sufficient evidence that these communications "discuss or transmit legal advice about a particular issue," and therefore are protected by attorney-client privilege.  *See Datel*, 2011 WL 866993.

Dolby argues that Stefani's description of the document in his declaration is inconsistent with the log description, which reads "[c]onfidential email prepared at the direction of counsel and memorializing legal advice regarding negotiation of Dolby license agreements."  Dolby is correct that the log description is inaccurate, as there is no indication that the email exchange itself was "prepared at the direction of counsel."  Rather, the email contains some discussion of legal advice within an otherwise unprivileged exchange.  Adobe should immediately review its log to correct this, and any similar error regarding the basis for the claim of privilege.  Adobe may not add any claims of privilege that do not appear on its current log.

Dolby also points out that the log entry for this document does not comply with the parties' agreed-upon logging method that "would show whether or not a document was produced with

redactions." Opp. at 19. Dolby asserts that this issue appears with other documents at issue as well, including Log Entry No. 771, discussed below. As Adobe conceded at the hearing, Adobe made errors in logging redacted documents. Adobe is ordered to immediately review its log and correctly reflect all redactions in a manner consistent with the parties' agreed protocol.

### 5. Log Entry No. 771

Log Entry No. 771 is an email exchange between Adobe employees that "is predominately related to gathering information to support Adobe's on-going licensing negotiations with Dolby—a business purpose." Mot. at 10. Three sentences in the May 11, 2017 email from Adobe employee Felicity Gaines are redacted. The redacted portions of the email discuss instructions received from in-house counsel. Perry, who was copied on that chain, testifies that these sentences "reflect[] the specific request for information from Adobe in-house counsel related to their legal analysis." Perry Decl. ¶ 7. Shah and Kolnes also testify that they instructed Gaines and Perry to investigate the specific issue during a meeting that occurred earlier on May 11, 2017. Shah Decl. ¶ 6; Kolnes Decl. ¶ 5. This is similar to the situation in *Datel*, where an attorney orally instructed an employee to conduct an investigation into the factual matters underlying the case. While the court held that the subsequent discussions among employees were not privileged because they only discussed technical aspects of a product, the first email relaying the request from counsel was found to be privileged. 2011 WL 866993, at *6. Gaines's email appears to relate instructions from counsel, and Adobe's supporting declarations adequately establish the basis for claiming privilege.

Accordingly, Adobe has made a sufficient showing that the redactions contained in this log entry are protected by attorney-client privilege.

### 6. Log Entry No. 1754

Log Entry No. 1754 is "an email response on April 26, 2016 to a calendar invitation sent by Mr. Stefani to Adobe employee Pam Clark." Mot. at 10; *see* Stefani Decl. ¶ 7. Adobe asserts that the calendar invitation was sent by Stefani, who was "acting at the direction of counsel to gather information to be presented to in-house counsel for purposes of obtaining legal advice on interpreting the Dolby license agreements." Mot. at 10. This document is not privileged. It contains a brief reference to a request from in-house counsel and reveals nothing about what information the

17

1    attorney is seeking or why. Adobe has not met its burden of establishing that this mere reference to

2    an unspecified direction from an unnamed attorney is a privileged attorney-client communication.

3          Adobe must produce a copy of Log Entry No. 1754.

4          **7.    Log Entry No. 1875**

5          Log Entry No. 1875 is an email from Stefani to two other employees that Adobe asserts was

6    sent "for the purpose of seeking legal advice from Adobe in-house counsel concerning the legal

7    implications of removing Dolby technology from Adobe products." Mot. at 11. Adobe claims both

8    attorney-client privilege and work product protection over the email. Stefani states that he had

9    contacted Adobe in-house attorneys Shah, Kolnes, and James Oh the day before he sent the email

10   to request advice on this issue. Stefani Decl. ¶ 8. He avers that they instructed him to "gather

11   additional information for legal so that they could express an opinion" on the inquiry. *Id.* Shah and

12   Kolnes confirm this account. Shah Decl. ¶ 5; Kolnes Decl. ¶ 4.

13         Upon review of the document, the court concludes that it is not protected by attorney-client

14   privilege. The document appears to have been generated within a broader discussion of removing

15   Dolby technology from Adobe products, and Adobe has presented sufficient evidence that Stefani

16   sought legal advice on that topic at some point in time. However, the specific document at issue

17   appears to also relate to the business impact of removing the technology from Adobe products. An

18   in-house counsel's advice regarding business matters is not protected by attorney client privilege.

19   *See Oracle*, 2011 WL 3794892, at *3 (finding that an email relaying a business discussion was not

20   protected by attorney-client privilege); *Hynix*, 2008 WL 350641, at *3 (determining that the

21   proponent of the privilege failed to distinguish the legal and business purposes of the document at

22   issue). When a communication may relate to both legal and business advice, the proponent of the

23   privilege must make a "clear showing" that the "primary purpose" of the communication was

24   securing legal advice. *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076. Neither the content of the

25   document itself nor Adobe's supporting evidence distinguish the business purpose of the email from

26   the legal purpose. Tellingly, the email title is "total users for Dolby" and the document states that

27   an individual named "Jody" is also requesting information on that topic. None of the declarations

28   establish who Jody is, whether she is an attorney, or whether she and Stefani were investigating the

purported legal issue together. Further, the email discusses "impact analysis," and in context, that statement does not appear to be referring to legal issues. No lawyers are on the chain or mentioned in the chain, and there is no discussion of legal advice or the Dolby audit. Given these indicia of business purposes, it is Adobe's burden to clearly show that the primary purpose of the email was to secure legal advice. The conclusory statements in the supporting declarations do not meet that standard.

For the same reasons, the document does not qualify for work product protection. Although Stefani summarily asserts that "there was discussion [at that time] that litigation between Adobe and Dolby was becoming increasingly likely," there is no indication in the document itself nor in the declarations from Shah and Kolnes that this information in particular was generated in anticipation of litigation. *See* Stefani Decl. ¶ 8. Rather, the email appears to relate at least in part to the business impact of removing Dolby products from Adobe software, and not to the ultimate legal dispute between the parties.

Accordingly, Adobe must produce a copy of Log Entry No. 1875.

### 8. Log Entry No. 2521

Log Entry No. 2521 is an "instant message chat that was captured in an email between two Adobe employees on November 7, 2014." Mot. at 11. The exchange is between Delia Peterson and Joe Perry. Perry testifies that the message thread captures a conversation in which he and Peterson were "discussing legal advice received from Adobe's then in-house attorney Hung Chang regarding a Dolby contract interpretation issue." Perry Decl. ¶ 4. Chang confirms that this exchange reflects "legal guidance and interpretation regarding the triggering and calculation of Creative Cloud royalties that I had provided to Ms. Peterson and Mr. Perry in connection with my interpretation of the contracts between Adobe and Dolby." Chang Decl. ¶ 6.

The text exchange is disjointed in that it appears to encompass two separate topics. The first part of the thread (from timestamp 10:14 a.m. to 10:49 a.m.) and the last part of the thread (from timestamp 10:58 a.m. to 11:04 a.m.) do not appear to relate to legal advice or royalty reporting. Those portions make ambiguous references to "him" and "they," which from context do not appear to refer to legal counsel. The ambiguity is particularly striking as Perry was a party to the exchange

19

and could have named the specific people he and Peterson were referencing in his declaration without revealing the content of the underlying discussion. Because it is impossible to tell from context and from Adobe's declarations whether those portions of the thread reflect a discussion of legal advice given by counsel, the court finds that they are not privileged.

The email also contains a limited discussion on royalty reporting that takes place at timestamp 10:53 a.m. and involves four text exchanges between Perry and Peterson. Based on Perry and Chang's declarations, it appears that this exchange is discussing legal advice regarding Chang's interpretation of the parties' contracts with regard to the triggering and calculation of royalties.

Accordingly, Adobe must produce Log Entry No. 2521, except that it may redact the four text messages at timestamp 10:53 a.m.

### 9.   Log Entry No. 2582

Log Entry No. 2582 is an email exchange between Perry and Peterson that provides a "summary of open questions from Dolby's royalty auditors." Perry Decl. ¶ 6. This document was produced to Dolby with the exception of a single redaction. Perry asserts that the redaction relates to "legal advice communicated by Adobe in-house counsel Hung Chang to myself and Ms. Peterson between July 22, 2015 and August 5, 2015." *Id.* Chang confirms that he provided this advice on "the applicability of certain pricing terms under the parties' contracts." Chang Decl. ¶ 7. The redacted content makes specific reference to legal advice and appears to relate the legal opinion described by Perry and Chang. The document and Adobe's supporting declarations show that the redacted material discusses legal advice given by counsel. Therefore, the document is privileged.

Adobe is not required to produce a copy of this document.

### 10.   Log Entry No. 2673

Log Entry No. 2673 is an email exchange between Adobe employees discussing an investigation into a piracy issue that is unrelated to this case. Mot. at 12. Dolby responds that it would not have requested it if it had known that it does not concern this litigation. Opp. at 23.

As both parties agree that the document is not relevant to this litigation, Adobe may withhold it because it falls outside the scope of discoverable information.

//

### 11.    Log Entry No. 2762

Log Entry No. 2762 is "an email exchange between five Adobe employees on March 20, 2014 who were discussing an issue on which they were going to seek legal advice from Adobe's in-house counsel, namely, Adobe's royalty reporting obligations for Creative Cloud sales arising from the Dolby licensing agreements." Mot. at 13.  Perry, a participant on the chain,[6] testifies that the "purpose of the email chain was to gather information to be used at a meeting requested by Adobe's legal team to discuss the application of the Dolby licensing agreements to Creative Cloud." Perry Decl. ¶ 3.  In the first email on the chain, Peterson references an upcoming meeting in which in-house counsel were expected to participate.  Peterson requests information from Woo that was intended to be shared with counsel at the meeting.  Perry confirms that the meeting took place as scheduled[7] and that he remembers specifically discussing the information that Peterson requested in this document.  Perry Decl. ¶ 3; Perry Supp. Decl. ¶ 2.  Chang testifies that he attended the meeting and used the information in Log Entry No. 2762 to provide legal guidance to Perry and Peterson "concerning Adobe's royalty reporting obligations under the parties' contracts." Chang Decl. ¶ 5.

After reviewing the content of the document and Adobe's supporting declarations, the court concludes that the email exchange is privileged.  The initial email from Peterson makes clear that she is requesting information that she intended to share with in-house counsel.  There is a discussion of methods for calculating royalties, and from context, it appears that Peterson and Woo intended to seek legal advice relating to their conclusions.  Chang's declaration supports that Peterson and Woo shared the information they exchanged in that email and that Chang provided legal advice regarding Adobe's royalty reporting obligations relating to that information.  Chang Decl. ¶ 5.

Accordingly, Log Entry No. 2762 is protected by attorney-client privilege.

---

[6] Dolby points out that Adobe's privilege log only lists two parties to the email exchange. Opp. at 23.  Perry's supplemental declaration explains that most of the email exchange is between five employees with the exception of the last message, which is only between Peterson and Nicholas Woo. Perry Supp. Decl." ¶ 2.  Adobe's privilege log misleadingly lists only Peterson and Woo as participants in the exchange.  Adobe is ordered to fix this logging error.

[7] Perry's initial declaration misstates the date of the meeting as April 4, 2015.  Perry Decl. ¶ 3.  He clarifies in his supplemental declaration that the meeting actually took place on April 4, 2014.  Perry Supp. Decl. ¶ 2.

### 12.     Log Entry No. 4016

Log Entry No. 4016 is a partially redacted email thread beginning with an email from Rich Rowley to Perry.  Rowley forwarded Perry an email from a Dolby licensing compliance director that stated that Dolby intended to exercise its rights under the parties' license agreements to audit Adobe's books and records.  Rowley then asked Perry whether Perry had any concerns relating to the audit.  Perry responded with a short list of concerns, two of which are redacted.  Perry asserts that the redactions relate to legal advice he had obtained from Adobe in-house counsel "regarding legal issues associated with a different commercial relationship."  Perry Decl. ¶ 5.  Perry clarifies in his supplemental declaration that this advice arose in the context of a royalty audit with another business partner, and Dolby's audit triggered "similar 'legal interpretation' concerns," which he then relayed to Rowley.  Perry Supp. Decl. ¶ 4.

Dolby draws attention to the timing of the emails.   The initial email from Dolby's compliance officer was sent on Monday, January 5, 2015, at 6:49 p.m.  Rowley forwarded the message to Perry that same day at 9:54 p.m.  Perry responded the next morning at 9:15 a.m.  Perry admits that he did not seek legal advice from Adobe's counsel in the short time span between Rowley's email and his response.  *See* Perry Supp. Decl. ¶ 4.  Rather, he relayed concerns that had arisen in a different commercial relationship that he believed may be pertinent to the Dolby audit as well.  Perry states that he discussed this legal advice "at length over the prior several years" with Adobe's in-house counsel.  Dolby argues that this assertion of privilege "appear[s] to be Adobe's most egregious over-assertion of the attorney-client privilege in this dispute."  Opp. at 24.  It points out that the redacted areas of concern relate to Adobe's Enterprise License Agreements and Creative Cloud, which are Dolby's "two largest damages claims in this case."  *Id.*  Dolby asserts that Perry's received legal understanding of a different situation over "several years" cannot transform his opinions into legal advice.

Adobe's position is untenable.  It essentially posits that a non-lawyer employee who receives legal advice relating to one situation can relay that advice under the cloak of attorney-client privilege regarding different situations that the employee deems "similar."  None of the cases cited by Adobe can be stretched to accommodate this theory.  It is clear from the exchange and from Perry's

declaration that he did not seek legal advice about his concerns relating to Dolby's audit before stating those concerns to Rowley. Perry's own understanding of legal principles derived from his experience talking with lawyers over the years is not entitled to protection from disclosure and applying privilege in this case would cut against the principle that federal privilege law is "narrowly and strictly construed." *Vasudevan Software, Inc.*, 2011 WL 1599646, at *1.

Adobe is therefore ordered to produce Log Entry No. 4016 in its entirety.

## IV.    CONCLUSION

Based on the foregoing, Adobe is ordered to produce Log Entry Nos. 52, 62, 1754, 1875, and 4016. It is further ordered to produce Log Entry No. 2521, with redactions as laid out above. Adobe's motion to retain privilege designations is granted as to Log Entry Nos. 44, 45, 84, 771, 2582, 2673, and 2762.

The parties jointly proposed the appointment of the Honorable William J. Cahill (Ret.) as special master. **By September 5, 2019** the parties shall file a letter confirming that they have checked with Judge Cahill and verified that he is available to perform the work within the confines of the case schedule set by the Honorable Yvonne Gonzales Rogers. The parties shall request that Judge Cahill file **by September 5, 2019** "an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455," pursuant to Federal Rule of Civil Procedure 53(b)(3)(A), as well as a description of his hourly rate and any associated costs. If Judge Cahill discloses a ground for disqualification, Rule 53(b)(3)(B) requires the parties to waive the disqualification with the court's approval before the court may enter the appointment order. **By September 5, 2019**, the parties shall also file a statement indicating whether they have agreed on the standard of review for the special master's findings of fact under Rule 53(f)(3). The court will issue an appointment order after reviewing these submissions.

Adobe is ordered to immediately review its privilege log and make all corrections as noted in this order, as well as to determine whether any items should be removed as a result of the rulings made in this order. Adobe shall provide its final amended log to Dolby by **September 9, 2019**. By **September 16, 2019**, lead counsel for both parties shall meet and confer to identify all remaining disputes to be presented to the special master regarding Adobe's privilege log for non-attorney

communications. If the special master finds that 20% or more of Adobe's logged documents are improperly withheld, Adobe shall bear the full cost of the special master. Otherwise, the parties shall bear costs equally.

**IT IS SO ORDERED.**

Dated: August 29, 2019



IT IS SO ORDERED

Donna M. Ryu
United States Magistrate Judge