**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DOLBY LABORATORIES LICENSING CORPORATION, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**ADOBE INC.,**<br><br>Defendant. | CASE NO. 18-cv-01553-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE OR EXCLUDE EXPERT TESTIMONY**<br><br>Re: Dkt. Nos. 159, 162 |

The parties in this action have each filed a motion to exclude or strike testimony offered by the opposing party's experts. Specifically, Dolby seeks to strike certain testimony offered by Adobe experts Steven Kursh, Schuyler Quackenbush, and Christian Tregillis, while Adobe seeks to strike certain testimony offered by Dolby experts John Strawn, Paul Meyer, and Lorin Hitt. (Dkt. Nos. 159, 162.) The Court heard oral argument on October 23, 2019.[1]

Federal Rule of Evidence 702 controls expert witness testimony. The admissibility of an expert opinion requires a three-step analysis:

> The admissibility of expert testimony, Rule 702, requires that the trial court make several preliminary determinations, Rule 104(a). The trial court must decide whether the witness called is properly qualified to give the testimony sought. A witness may be qualified as an expert on the basis of either knowledge, skill, experience, training, or education or a combination thereof, Rule 702. The trial court must further determine that the testimony of the expert witness, in the form of an opinion or otherwise, will assist the trier of fact, i.e., be helpful, to understand the evidence or to determine a fact in issue, Rule 702(a). Finally the trial court must determine that as actually applied in the matter at hand, Rule 702(d), to facts, data, or opinions sufficiently established to exist, Rule 702(b), including facts, data, or opinions reasonably relied upon under Rule 703, sufficient assurances of trustworthiness are present that the

---

[1] On November 7, 2019, pursuant to the Court's order, Adobe filed a supplemental statement in which it identified certain of its experts' opinions that it would not offer at trial. (Dkt. No. 219.)

United States District Court
Northern District of California

expert witness' explanative theory produced a correct result to warrant jury acceptance, i.e., a product of reliable principles and methods, Rule 702(c).

Michael H. Graham, 5 HANDBOOK OF FED. EVID. § 702:1 (8th ed.) (footnotes omitted). An expert is generally not permitted to opine on an ultimate issue of fact except in limited circumstances, since such opinions may invade the province of the jury. *See Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) ("[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." (quoting *Kostelecky v. NL Acme Tool/NL Indus., Inc.,* 837 F.2d 828, 830 (8th Cir. 1988))). Nor may an expert opine on questions which are matters of law for the court. *See id.* at 1058 (deciding questions of law is the exclusive province of the trial judge); *McHugh v. United Service Auto Assoc.*, 164 F.3d 451, 454 (9th Cir. 1999) (expert testimony cannot be used to provide the legal meaning or interpretation of insurance policy terms); *Aguilar v. Int'l Longshoremen's Union Local No. 10,* 966 F.2d 443, 447 (9th Cir. 1992) (expert opinion that reliance was reasonable and foreseeable were inappropriate subjects for expert testimony). However, as a practical matter, experts may express opinions based upon hypotheticals and information which would otherwise be inadmissible hearsay on its own. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019). Moreover, Rule 703 FRE explicitly allows an expert to base an opinion on facts or data made known to the expert at or before the hearing. *Interwoven, Inc. v. Vertical Computer Sys.*, CV 10-04645 RS, 2013 WL 3786633, at *7 (N.D. Cal. July 18, 2013) ("Experts are, however, permitted to rely on hearsay evidence in coming to their conclusions, so long as an expert in the field would reasonably rely on that information.").

Below, the Court addresses each of the experts whose testimony is at issue in the parties' motions to exclude.

**I. Industry Experts**

**A. Steven Kursh**

Adobe retained Dr. Kursh to provide opinions regarding whether Dolby's interpretation of the agreements at issue in this case is "commercially reasonable relative to customs and practices in the software industry." (Dkt. No. 158, Ex. A ("Kursh Opening Report"), ¶ 13.) In addition, Dr.

2

Kursh purports to offer his opinions about the technical meaning of terms used in the agreements "relative to industry customs and practices." (*Id.*)[2]

Dolby seeks to exclude Dr. Kursh's opinions in their entirety. Dolby challenges specific portions of Dr. Kursh's opening report (*id.*, ¶¶ 67-99, 101, 114, 126-214) on the grounds that Dr. Kursh offers impermissible legal opinions regarding contract interpretation and fails to provide any basis for his "customs and practices" opinions. Dolby also challenges Dr. Kursh's opinion in his rebuttal report that "the applications in Creative Cloud flow together and are complementary of each other," and thus, that Adobe included Dolby's technology in Creative Cloud applications only "where it was appropriate and efficient." (Dkt. No. 158, Ex. B ("Kursh Rebuttal Report"), ¶¶ 34-41.) Dolby contends that this opinion lacks foundation because Dr. Kursh never examined any of Adobe's source code.

Adobe counters that Dr. Kursh's opinions are based on extensive experience with licensing negotiations and partnerships, as well as an examination of numerous third-party sources. Adobe further argues that rather than reaching legal conclusions, Dr. Kursh simply provides industry context to aid in the interpretation of terms like "professional" and "consumer." With respect to the rebuttal report, Adobe contends that Dr. Kursh properly offers an opinion, based on industry customs and practices regarding product bundling, to rebut Dolby's damages expert.

The Court largely grants Dolby's request to exclude Dr. Kursh's opinions, with the exceptions noted herein. Specifically, Dr. Kursh's opinions regarding contract interpretation are excluded. Dolby and Adobe are sophisticated parties. The contracts at issue were negotiated by attorneys and technical personnel. That a dispute has arisen regarding contract interpretation does not mean that a third party may offer "opinions" to support one party's interpretation. In large part, the proffered opinions are merely attorney argument dressed in the guise of "custom and practice."

The role of an expert is to provide specific expertise so that a fact finder can make its own decisions with respect to the factual dispute. To the extent that an issue is within the sphere of a

---

[2] In its motion to exclude, Adobe notes that it proposed that the parties stipulate not to offer experts on contract interpretation issues, but Dolby refused.

3

fact finder's understanding, an "expert" cannot usurp that role. Thus, Dr. Kursh's opinion regarding the "best practice" in drafting contracts is no more than legal argument. For instance, the jury does not need Dr. Kursh to opine that the disputed terms in the contract should have been "explicit" or "clearly defined," or that they should have had "clear objective criteria." (Kursh Opening Report, ¶¶ 149-150; *see also id.* ¶¶ 82-85 (noting that license agreements must be analyzed by "the language agreed to by the parties").) Further, cross-referencing American Bar Association manuals or other legal resources is not equivalent to relying on "industry custom and practice"; the documents to which Dr. Kursh cites provide legal training on licensing. Presumably, percipient witnesses employed by each party will testify and explain their own version of the basic facts to the jury. To claim that a person dressed as an expert can opine in court and seek to interpret the contracts at the core of the parties' dispute would usurp the jury's role of resolving contract disputes and open the door to "legal experts" frequenting the courtroom.

Moreover, common business practices—such as seeking "clarity" regarding contract interpretation or using multiple contracts or addendums to define the terms of an agreement—are not "custom[s] and practice[s] specific to the software industry." Nor would the jury benefit from Dr. Kursh's opinions on the effect of payments and receipts on ongoing business relationships (*id.* ¶¶ 185-190) or bundling (*id.* ¶¶ 191-202). The jury does not need expert guidance on such generic business considerations.[3]

Accordingly, Dolby's motion to exclude Dr. Kursh's opinions is granted, except for the following opinions, which are based on Dr. Kursh's industry expertise and would be properly before the jury:

---

[3] In support of its motion, Dolby points to *Cisco Sys., Inc. v. Hewlett-Packard Co.*, No. 2015-1-CV-284707 (Cal. Super. Ct. Santa Clara County, May 3, 2018) (order after hearing on April 27, 2018), in which a court excluded Dr. Kursh's testimony because "references to specific industry customs and usage that inform[ed] his interpretation of" the agreement at issue were "few and far between." Dr. Kursh's opinions in this case suffer from the same deficiencies. *Actuate Corp. v. Aon Corp.*, No. C 10-05750 WHA, 2012 WL 2285187, at *3 (N.D. Cal. June 18, 2012) does not require a contrary finding. There, Dr. Kursh was found "qualified to testify about how the term CPU would have been understood in the context of software license agreements," but consistent with this Court's holding, Dr. Kursh was "precluded from testi[fying] about the particular contracts and conduct at issue in th[e] action."

4

- The lack of a distinction between "consumer" and "professional" designations in the software industry, excluding issues related to contract interpretation. Thus, Dr. Kursh may testify that, for example, "there is no generally-accepted distinction between consumer and professional software . . . use." (*Id.* ¶ 134; *see also id.* ¶¶ 136-137, 139-140.)

- The certification process generically. (*See, e.g., id.* ¶¶ 174-175.) The Court reserves on whether there has been a sufficient proffer for the conclusion that "[i]t would be contrary to industry custom and practice to require further implementations of Dolby Plus in Creative Cloud applications following the completion of this approval process." (*Id.* ¶ 184.)[4]

Given how little of Dr. Kursh's opinion is proper, the Court will discuss what else Dr. Kursh may say at trial, if anything, during the pretrial conference.

### B. Lorin Hitt

Dolby offers Dr. Hitt, a professor of operations, information, and decisions at the University of Pennsylvania, as an expert on customs and practices in the software industry and as a rebuttal to Dr. Kursh. (Dkt. No. 161, Ex. J ("Litt Report"), ¶¶ 1, 9.)

Adobe moves to strike four portions of Dr. Hitt's report: Opinions B (¶¶ 19-20), B-3 (¶¶ 47-53), C (¶¶ 54-65), and D (¶¶ 66-71). In general, the parties disagree as to whether these opinions constitute improper contractual interpretation or actually rebut any opinion from Dr. Kursh. Adobe further argues that because Dr. Hitt is an academic without practical experience, he lacks the qualifications to express an opinion regarding Dolby's product certification process and its impact on licensing.

Adobe's request to exclude portions of Dr. Hitt's report is granted in part. Specifically, to the extent the Court has stricken certain of Dr. Kursh's opinions, there is no need for rebuttal, and Dr. Hitt's rebuttal opinions likewise are stricken. (*See, e.g., id.* ¶¶ 66-71 (discussing bundling).) Further, Dr. Hitt is subject to the same limitations as Dr. Kursh, namely, any opinions from Dr. Hitt regarding contract interpretation (*see id.* ¶¶ 53, 56) or generic business practices (*see id.* ¶ 68), are excluded. These limitations significantly reduce the portions of Dr. Hitt's report that would be properly before the jury.

---

[4] In order to determine whether this opinion is proper, the Court requires a further proffer from Adobe which may be submitted as part of the pre-trial filings. Adobe is reminded that any information provided to the Court should have been previously disclosed.

5

1  To the extent the Court allows Dr. Kursh to opine on issues regarding industry customs
2  and practices, however, Dr. Hitt is permitted to offer a rebuttal. Thus, Dr. Hitt, like Dr. Kursh,
3  may testify about the distinction between "consumer" and "professional" designations in the
4  software industry (*see id.* ¶¶ 19-20, 47-53), excluding any contract interpretation. Further, Dr. Hitt
5  may offer opinions regarding the product certification process generally. (*See id.* ¶¶ 61-63.)
6  Moreover, notwithstanding his lack of industry experience, Dr. Hitt has the requisite expertise to
7  address industry customs and practices based on his study of the industry, including his
8  examination of academic resources and publicly-available third-license agreements. The
9  objections, in this regard, relate to the weight of his opinion rather than admissibility.

**II. Technical Experts**

    **A. Schuyler Quackenbush**

Adobe offers Dr. Quackenbush as an expert on "the functionality of the audio compression software that Adobe licensed from Dolby." (Dkt. No. 158, Ex. D ("Schuyler Report"), ¶ 1.)

Dolby seeks to exclude Opinions 2 (¶¶ 157-171) and 4 (¶¶ 218-224) of Dr. Quackenbush's report, in which he opines that "once compiled into object code," the Dolby Digital and Dolby Digital Plus Asserted Works are "merely functional and non-expressive." Dolby avers that these portions of the report contain improper legal opinions about whether Dolby's technology is "expressive," and rely on erroneous legal conclusions that are contrary to Ninth Circuit law holding that copyright in source code extends to the object code form. Adobe counters that Dr. Quackenbush opines that object code is "non-expressive" "as a matter of software engineering," not as a matter of law, and only "references copyright law and terms to guide the inquiry[.]" Adobe further disagrees with Dolby's interpretation of the relevant case law.

Dolby's request to strike Opinions 2 and 4 of Dr. Quackenbush's report is denied. As an initial matter, and as explained in the Court's order on the parties' cross-motions for summary judgment, although the Ninth Circuit has recognized that both source code and object code are eligible for copyright protection, a dispute of material fact exists regarding whether the object code provided to Adobe included Dolby's copyrighted source code. Dr. Quackenbush properly opines on this factual issue without relying on legal conclusions contrary to Ninth Circuit law.

Moreover, the Court notes that both parties' technical experts opine in similar ways. Fundamentally, Dr. Quackenbush provides an explanation for his opinion that MainConcept's object code libraries, which were used by Adobe, contained no elements of "expression" or "creativity." As discussed herein, Dolby's technical expert, Dr. Strawn, provides a basis for his contrary opinion. Given the highly technical nature of the source code and object code at issue, the Court finds that the expertise offered by both experts will be helpful to the jury in resolving disputed factual issues in dispute.

That said, the Court will provide further guidance regarding the manner in which such opinions may come into evidence at the pretrial conference and once the Court discusses the jury instructions using the terms "expression," "creative," and "functional." In particular, the experts must segregate the basis for their opinions from the opinions themselves. Further, the Court reminds the parties that experts may not be the source of the factual material upon which their opinions are based. Thus, such evidence must first be admitted before the expert may rely on that evidence to provide an opinion thereon.

**B.     John Strawn**

As a rebuttal to Dr. Quackenbush, Dolby offers opinions from Dr. Strawn regarding "computer software and programs that are at issue in this action." (Dkt. No. 161, Ex. G, ¶¶ 1-2.)

Adobe seeks to exclude Section VIII (¶¶ 83-111) of Dr. Strawn's report, in which he concludes that MainConcept's object code library used by Adobe "matches" and "incorporates" Dolby's source code. Adobe argues that Dr. Strawn's opinion supports a "new, never-pleaded theory of indirect copyright infringement based on Adobe's inclusion of third-party object code form MainConcept." Adobe further contends that Dr. Quackenbush's report never discusses the theory that Dr. Strawn purportedly "rebuts."

Adobe's arguments fail to persuade. As previously explained, the opinions of both parties' technical experts will aid the jury in deciding the issues in this case. Insofar as Dr. Strawn opines on issues not discussed in Dr. Quackenbush's report, Adobe has had a full and fair opportunity to rebut those opinions through Ronald Schnell's expert report. Further, as the Court noted in its order on summary judgment, Dolby's theory of infringement is not "new," but rather, falls within

7

the scope of the pleadings, which generally allege infringement of the "Asserted Dolby Works." Dr. Strawn's discussion of this infringement theory therefore is proper.

Accordingly, Adobe's request to strike Section VIII of Dr. Strawn's report denied. The Court reiterates, however, that it will provide further guidance regarding the permissible limits of Dr. Strawn's testimony at the pretrial conference.

## III. Damages Experts

### A. Paul Meyer

Mr. Meyer was retained by Dolby as a damages expert. (Dkt. No. 161, Ex. E ("Meyer Report"), ¶ 1; Ex. F ("Meyer Supplemental Report"), ¶ 1.) Relevant here, Mr. Meyer calculated the royalties Adobe purportedly should have paid to Dolby based on the royalty rates applicable to Adobe's sales and the royalty-bearing sales Adobe purportedly should have reported.

Adobe seeks to exclude Mr. Meyer's "hypothetical royalty" analysis on three bases: (i) Dolby disavowed such a damages claim throughout discovery; (ii) Mr. Meyer's analysis is based on a breach-of-contract model, improperly calculating damages based on hypothetical, not actual, acts of infringement; and (iii) Mr. Meyer's report contains methodological flaws, including failures to consider all contracts at issue and properly apportion value between copyrighted and non-copyrighted materials.

Dolby principally raises four counter-arguments. First, it argues that it never "disavowed" seeking actual damages, and instead, repeatedly stated in its complaint, initial disclosures, and meet and confers that it would seek "actual damages" and was continuing to evaluate its damages theories. Dolby further asserts that it provided Adobe with nearly 100 agreements between Dolby and third-party licensees, making clear that it was producing them for damages purposes and suggesting Dolby might pursue hypothetical royalty damages. Second, Dolby avers that Mr. Meyer properly calculated damages based on each act of infringement, as measured by each sale of a Creative Cloud subscription that gave a user access to use all software in the cloud. Third, Dolby argues that the royalty rate used by Mr. Meyer, although not the actual rate agreed to by the parties, is based on the parties' own negotiation history and therefore is a proper basis for his

8

damages calculation. Fourth, Dolby rejects Adobe's argument that the report contains methodological flaws.

Adobe's motion to exclude Mr. Meyer's "hypothetical royalty" analysis is denied. Although Adobe has presented evidence suggesting that Dolby was less than forthcoming about its damages theory, the Court is not persuaded that Dolby ever disavowed the theory articulated in Mr. Meyer's report. (*See* Dkt. No. 161, Ex. F (stating, in July 20, 2019 meet and confer letter, that "[t]he relative value of the Dolby Technology containing the Asserted Dolby Works is directly relevant to a damages calculation based on a hypothetical reasonable royalty, a theory that has been repeatedly upheld within the 9th Circuit"); Ex. P (response to interrogatory 16 stating that "[Dolby's] damages for copyright infringement will be based, in whole or in part, on the profits earned by Adobe . . .").) Absent express disavowal, Dolby is entitled to offer expert opinions to support its damages calculation.

Insofar as Adobe disagrees with the factual bases underlying Mr. Meyer's methodology, such as that Mr. Meyer calculated damages based on Creative Cloud purchases rather than application downloads, such issues are properly resolved by the jury, not this Court. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge."). Adobe, for its part, will have a full and fair opportunity to challenge Mr. Meyer's methodology through its rebuttal expert, Mr. Tregillis, discussed in further detail below.[5]

//

//

---

[5] Adobe further argues that at his deposition, Mr. Meyer offered speculative testimony regarding (i) what Adobe knew and intended when entering into a licensing agreement with Starbucks; (ii) Adobe's financial success and growth in market capitalization; and (iii) what Dolby knew or could have known about Adobe's royalty reporting practices. The Court notes that much of the testimony identified by Adobe, including Mr. Meyer's opinions about Adobe's overall financial success or what the parties did or did not know through the course of their business relationship, bears a tenuous relationship to Mr. Meyer's report and lacks an evidentiary basis. Mr. Meyer will not be permitted to offer opinions at trial that have not been clearly disclosed in his expert report and that are not based in fact. Again, the Court will discuss these matters at the pretrial conference.

### B. Christian Tregillis

Adobe retained Mr. Tregillis to rebut Mr. Meyer's opinions and to "analyze accounting, financial, economic, valuation, and licensing issues" related to Dolby's claims. (Dkt. No. 158, Ex. F ("Tregillis Report").)

Dolby seeks to exclude from Mr. Tregillis' rebuttal report: (i) paragraphs 160 through 185, on the ground that Mr. Tregillis admitted in his deposition that he has no opinion the matters discussed therein and instead was offering mere "observations"; and (ii) paragraphs 156, 203 through 207, and 228 through 231, on the ground that they offer improper legal conclusions regarding copyright law. Adobe counters that these paragraphs summarize other experts' opinions to form the basis for Mr. Tregillis' rebuttal and properly challenge Mr. Meyer's methodologies and conclusions.

Dolby's motion to strike portions of Mr. Tregillis' report is denied. Paragraph 156 of Mr. Tregillis' report summarizes Dr. Quackenbush's testimony. Given that Dr. Quackenbush generally will be permitted to testify regarding his opinions, Mr. Tregillis may refer to this testimony in his report. With respect to the remaining paragraphs, insofar as Mr. Tregillis summarizes Mr. Meyer's opinions or other admissible evidence, he is permitted to do so in order to establish a framework for his own opinions, such as that Mr. Meyer "greatly overstate[d] royalties owed by Adobe." This is not a case where, as Dolby contends, expert testimony "simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12–cv–03587–WHO, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015) (citation omitted). As previously noted, however, neither Mr. Tregillis nor any other expert can be the source of the factual material upon which an expert opinion is based, and rather, such factual material must be separately admitted into evidence.

The Court also finds that, contrary to Dolby's contentions, paragraphs 203 through 207 and 228 through 231 do not offer inadmissible legal conclusions. Although the titles of those sections—which state that Mr. Meyer's royalties analysis is not connected to a "copyright infringement cause of action" and is "illogical in light of the contract as a whole"—suggest legal

10

opinions may follow, the substance of these sections properly challenge Mr. Meyer's calculations based on Mr. Tregillis' understanding of "economic realities" related to royalty transactions.

\* \* \* \* \*

Based upon the foregoing, the Court rules as follows with respect to the parties' motions to exclude or strike certain expert testimony:

(1) The motion to exclude the opinions of Dr. Strawn is **GRANTED**, subject to the exceptions set forth above;

(2) Adobe's motion to exclude Opinions B, B-3, C, and D of Dr. Hitt's report is **GRANTED**, subject to the exceptions set forth above;

(3) Dolby's motion to exclude Opinions 2 and 4 of Dr. Quackenbush's report is **DENIED**;

(4) Adobe's motion to exclude Section VIII of Dr. Strawn's report is **DENIED**;

(5) Adobe's motion to exclude Mr. Meyer's "hypothetical royalty" analysis is **DENIED**;

(6) Dolby's motion to exclude paragraphs 156, 160 through 185, 203 through 207, and 228 through 231 of Mr. Tregillis' report is **DENIED**.

This Order terminates Docket Numbers 159 and 162.

**IT IS SO ORDERED.**

Dated: November 26, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**